BRADLEY COMPANY, Appellant, vs. PAUL and another, Respondents.

*November 9 — November 24, 1896.*

*Chattel mortgages: Excess of amount named over debt: Fraud: Evidence.*

The inference of fraud arising from the fact that a chattel mortgage was given for a sum greater than the amount actually due the mortgagee is overcome by evidence that the mortgagee agreed to advance the excess presently, and that he in fact actually advanced it within thirty days.

APPEAL from an order of the circuit court for Oneida county: CHAS. V. BARDEEN, Circuit Judge. *Affirmed.*

This is an appeal from an order dissolving an attachment. In May, 1895, the plaintiff was a creditor of the defendants to an amount exceeding $600. The defendants, who were copartners, operated a small sawmill at McCord, Wisconsin, which they owned together with about 1,000 acres of land adjoining the mill, from which considerable timber had been cut. They also had a stock of lumber and shingles, as well as other personal property necessary to be used in the operation of the mill. On the 29th day of May, 1895, the plaintiff commenced action to recover its debt, and sued out an attachment on the ground that the defendants had conveyed and disposed of their property with intent to hinder and delay their creditors. The defendants traversed, and the issue was tried by the court. Upon the trial there was little dispute as to the facts, save in the question of the value of defendants' property. It appeared that the defendants came to McCord, and purchased said timber land, and built their mill in 1892; the money therefor being almost entirely furnished by George Voorhis, the father of the defendant *Voorhis*, who lived at Grand Rapids, Michigan. It was arranged that George Voorhis should advance to de-

fendants money to run the business, as it became necessary, and was to purchase the entire product of the mill at market prices. He had no other security. This arrangement was carried on until after this action was commenced; the defendants manufacturing lumber and shingles, and sending them to George Voorhis, and George paying their drafts from time to time as made. On the 1st day of May, 1895, the defendants owed George Voorhis a net balance on these transactions of $8,300. They also owed other creditors about $3,000, much of which was past due. George Voorhis sent his son William to McCord about May 1, 1895, to obtain some security for his debt. William looked over the property, and made further advances, as agent for his father, amounting to $400, between May 2 and May 6.

On May 6 the defendants executed and delivered to William, as agent for George, the following securities: (1) A bill of sale of the shingles and basswood lumber in the yard, for the expressed consideration of $2,500; (2) a promissory note for $7,000, secured by a chattel mortgage upon the remaining lumber and personal property of the firm, as well as by a real-estate mortgage upon the mill and the timber land of the firm. The bill of sale and the chattel mortgage were filed in the proper office on the same day, and the real-estate mortgage was immediately duly recorded. Upon the execution of these securities, William took control of the business, and remained in control until after the levy of the attachment. Thus it appears that just prior to the execution of these securities the defendants owed George Voorhis, for moneys previously or at that time advanced, a gross sum of $8,700, of which debt $2,500 was discharged by the bill of sale of the shingles and basswood lumber, leaving $6,200 balance of indebtedness, for which they gave a note secured by mortgages in the sum of $7,000. This discrepancy is explained by the defendants and by William Voorhis, who say that it was agreed that George was to

advance the remaining amount necessary to bring the debt up to $7,000. It appears, without dispute, that George did advance to the defendants $700 by the 22d of May, and more than enough on the 3d of June to make up the balance of the $7,000, and that all of the money so advanced went into the business. The property covered by the bill of sale and mortgages was substantially all the property of the firm. There was a conflict in the evidence as to its value, the lowest estimate being $8,715.50, and the highest nearly $14,000. The court found that the conveyances were not fraudulent, and the plaintiff appealed.

For the appellant there was a brief by *A. H. Woodworth* and *Curtis & Reid*, and oral argument by *A. H. Reid*. To the point that the mortgage was fraudulent they cited *Rice v. Morner*, 64 Wis. 599; *Butts v. Peacock*, 23 id. 359; *Carter v. Rewey*, 62 id. 552; *Divver v. McLaughlin*, 2 Wend. 596; *Bailey v. Burton*, 8 id. 399.

For the respondents there was a brief by *Alban & Barnes*, and oral argument by *John Barnes*.

WINSLOW, J. The plaintiff's contention is that the mortgages in question were fraudulent in law, because they purported to secure a debt of $7,000 presently owing, whereas in fact but $6,200, at most, was then owing, and the balance was to be advanced in the future. In *Barkow v. Sanger*, 47 Wis. 500, it was said in the opinion, on page 505, " The decisions in this court do not hold that a chattel mortgage which is given for a sum greater than is actually due the mortgagee is fraudulent and void in law." The cases of *Butts v. Peacock*, 23 Wis. 360, and *Blakeslee v. Rossman*, 43 Wis. 123, are then reviewed, and shown not to go to that extent. It was suggested in that case that in case it should appear that the discrepancy arose by mistake, or in case it was agreed that the mortgagee should presently advance enough to make up the difference, the inference of fraud

would or might be repelled.   While these suggestions were perhaps *obiter* in that case, we regard them as entirely reasonable and sound.   In the present case, after a perusal of the testimony, we are impressed with the idea that the transaction before us was free from actual intent to defraud.   It seems quite clear that the defendants expected to pay all their creditors in full; that they used all the money advanced to them in the diligent prosecution of the business; that the gist of the agreement between them and William was that the balance of the money represented by the note, to wit, the sum of about $800, was to be advanced, substantially, at once, or, in other words, presently.   It is certainly the fact that all but $100 of it was advanced within sixteen days after the security was given, and the entire sum within thirty days.   These circumstances, we think, may be sufficient to overcome the inference of fraud arising from the fact that the mortgages were given for a greater sum than the debt then owing, and the circuit court having found, in effect, that the inference was overcome, we shall not reverse that finding.

*By the Court.*— Order affirmed.