Liver, Appellant, vs. Thielke, imp., Respondent.

*September 24—October 21, 1902.*

*Fraudulent conveyance by insolvent debtor to his wife: Mortgage by wife: Consideration: Costs on appeal: Unnecessary printing.*

1. An insolvent debtor conveyed land to his wife without consideration, and she mortgaged it to her father, who knew the facts, to secure an alleged indebtedness of the husband to the father. It appearing that the amount of the mortgage was very largely in excess of any possible legal claim of the father against the husband, the mortgage, as well as the deed to the wife, is *held* fraudulent and void as against the husband's creditors.

2. Neither alleged debts of the husband to the wife's father, which were barred by the statute of limitations; nor interest on a

mortgage on lands of the wife, paid by her father for the protection of her property without authority from her husband; nor interest on mortgages on the land in question, assumed by the wife on the conveyance to her, such interest never having been paid or legally assumed by the father; nor items of store account, board, and clothing furnished by the father to the wife and children, but not shown to be legal debts of the husband—constituted a valid consideration for the mortgage to the wife's father, as against the husband's other creditors.

3. Disallowance, in the taxation of costs, of the expense of reprinting in appellant's brief the complaint, answers, and findings, is directed.

APPEAL from a judgment of the circuit court for Dodge county: JAMES J. DICK, Circuit Judge.· *Reversed.*

The plaintiff is a judgment creditor of the defendant John Frey. An execution having been issued and returned unsatisfied, the plaintiff brings this action in aid of execution to set aside a deed from Frey to his wife, the defendant Augusta, and a mortgage given by the wife to defendant *Thielke.* The facts material to the questions involved, as found by the court, may be stated as follows:

On May 18, 1901, John Frey was insolvent. On that day he executed and delivered to his wife a deed of about sixty acres of land, subject to two mortgages, for which the wife paid no consideration. The defendant *Thielke,* who is the father of the defendant Augusta, was present when said deed was delivered. On the same day Augusta executed and delivered to *Thielke* a mortgage for $1,500 on this same land. The evidence shows that this mortgage was given without the knowledge or consent of John Frey. The court found it was given to secure an actual indebtedness of $1,500, owing by John Frey to *Thielke,* and for no other consideration, and that the latter holds said mortgage to secure a *bona fide* indebtedness, without fraud. The evidence shows items of indebtedness claimed by *Thielke* against Frey as follows: Money loaned in 1887, $300; milk delivered in 1887, $150; Frey's note to Metzger, *Thielke* surety, $507; Frey's note to

Norton, *Thielke* surety, $300; interest to Herman Insurance Company, $100; Frey's store account to *Thielke,* $52; board for Frey's wife and children, $60; clothes and supplies for same, $75; interest on two mortgages on sixty acres, $175; horse sold Frey 1895, $125; four cattle sold Frey 1895, $60, —$1,904.

The court concluded that the deed in question was fraudulent and void, and should be set aside; that Augusta Frey had legal authority to execute the mortgage to her father, and that the latter holds it as a valid claim on said land. Judgment was ordered accordingly. Plaintiff requested findings to the effect that the mortgage to *Thielke* was without authority from Frey, and was fraudulent and void as to creditors, which the court refused. Due exceptions were taken to the court's findings and refusal to find, and from the judgment entered as directed the plaintiff takes this appeal.

For the appellant there was a brief by *Sawyer & Sawyer,* and oral argument by *H. W. Sawyer.*

For the respondent there was a brief by *Lamoreux & Husting,* and oral argument by *C. W. Lamoreux.* To the point that the wife had power to mortgage the land to secure debts of her husband, they cited 14 Am. & Eng. Ency. of Law (2d ed.) 297; *Hallowell v. Bayliss,* 10 Ohio St. 542; *Brown v. Scheffer,* 72 Minn. 27; *Longfellow v. Bernard,* 58 Neb. 612, 79 N. W. 255; *Beam v. Bennett,* 51 Mich. 148, 16 N. W. 316; *Haring v. Hamilton,* 107 Wis. 120; *Fitzgerald v. Dunn,* 112 Wis. 37; 24 Cent. Dig. 946; *Dolan v. Von Demark,* 35 Kan. 304, 10 Pac. 848; *Webb v. Brown,* 3 Ohio St. 246; *Francisco v. Ryan,* 54 Ohio St. 314; Bump, Fraud. Conv. § 500.

BARDEEN, J. If it be conceded that Mrs. Frey had legal authority to execute a mortgage to her father to secure his claim against her husband, still, if such mortgage was not given to secure a *bona fide* indebtedness, it was fraudulent as

to creditors and should be set aside. At the time this mort-
gage was given John Frey was utterly insolvent, and this fact
was known to the mortgagee. He was present when the
fraudulent deed from John Frey to his wife was given. He
knew Frey was deeply in debt. He knew the deed was with-
out consideration. While these facts alone perhaps would
not have prevented his taking security, they imposed upon
him the duty of acting in good faith. The items claimed to
have been secured by this mortgage are set out in the state-
ment. One item was for money loaned in 1889. No note
or other writing was taken. No proof was given that Frey
had ever recognized this indebtedness in any way. Another
item was for milk delivered in 1887. It stood a matter of
open account. It does not appear that any claim had ever
previously been made against Frey on account of either of
these matters. Both claims had been outlawed many years
before the mortgage was given. It is the settled law of this
state that the effect of the statute of limitations is to com-
pletely extinguish the right upon which it has operated. *Ein-
gartner v. Illinois Steel Co.* 103 Wis. 373, 79 N. W. 433.
Mrs. Frey had no power to resuscitate or to give these ex-
tinguished claims any legal validity. Another item was for
interest to the insurance company, amounting to $100. This
was due on a mortgage on lands owned by the wife, for which
*Thielke* was in no way responsible. It was paid by him with-
out any authority from Frey, and evidently for the protection
of his daughter's property. It constituted no debt against
Frey. In this connection we may consider another item of
$175, for interest on two mortgages upon the land in suit.
*Thielke* had never paid the amount, and was under no legal
obligation to do so. Under the agreement between Frey and
wife when the deed was given, the latter was to assume and
pay these mortgages. In no sense was it a debt due from Frey
to *Thielke*. The items of store account, board and clothing to
Frey's wife and children, were not proven as legal debts

against Frey. *Thielke* testifies to no fact from which any legal inference arises that Frey was bound to pay him therefor. Mrs. Frey left her husband and went to live with her father some time in the year 1901. The husband was not responsible for debts indiscriminately contracted by her. The proof does not show that *Thielke* furnished goods to the wife by Frey's request, or that they were necessaries, or were furnished under such circumstances as would make the husband liable therefor. At the time the mortgage was given, *Thielke* was security for Frey on the Metzger note of $500 and the Norton note of $300. No part of either note had been paid by him at that date.

From this review of the *Thielke* account, it appears that the only actual existing indebtedness of Frey to *Thielke* at the time the mortgage was given was for the horse and cattle, amounting to $185. These items were tacitly denied by Frey when he detailed the items of his indebtedness, which did not include *Thielke's* said claim, and said these were all of his debts. We do not say that *Thielke* might not, under proper circumstances, have taken security for his contingent liability on the notes mentioned, but, inasmuch as the mortgage largely exceeds any real or contingent claim he had against Frey, it became presumptively fraudulent. *Thielke* knew that Frey was under no obligation to him for any such amount as the mortgage secured. He knew Frey was deeply in debt, and had but little property. In speaking of the situation, *Mr. Thielke* said: "I made a good many payments, and had a good many expenses, so I thought to secure myself. I took a mortgage of $1,500, *and took it very easy. I might have taken one for $2,500.*" In his answer he set up that the consideration for said mortgage was moneys advanced as purchase price of the land covered by the mortgage, and for care of Frey's wife and children. He utterly failed in his proof as to moneys put into the land. His entire attitude is inconsistent with good faith. It cannot be easily reconciled on any

other theory than that he was assisting Mrs. Frey in placing the land beyond the reach of creditors. The mortgage, being so largely in excess of any possible legal claim, and being valid on its face, had a tendency to deceive creditors and delay them in the collection of their claims. The inference of fraud properly arising in the case was in no way repelled or overthrown by the testimony, or by the circumstances attending the transaction. *Butts v. Peacock,* 23 Wis. 359; *Bradley Co. v. Paul,* 94 Wis. 488, 69 N. W. 168; *Kellogg v. Clyne,* 4 C. C. A. 554, 54 Fed. 696. Under the circumstances we think it very clear that *Thielke* was not acting in good faith; that his mortgage was not taken to secure an actual existing indebtedness, as found by the court; and being so much in excess of any possible claim held by him, its tendency was to mislead and deceive Frey's creditors and prevent them collecting their claims against him. The court should have made findings as requested by plaintiff. The judgment must, therefore, be reversed, and a judgment for plaintiff entered, declaring said mortgage void as to creditors. In taxing costs the clerk will disallow the expense of printing fifteen pages of appellant's brief. A reprint of the complaint, answers, and findings was wholly unnecessary.

*By the Court.*—The judgment is reversed, and the cause remanded with directions to enter judgment as indicated in the opinion.

