### WILLIAM H. LAKE *vs.* GRANVILLE W. MORRIS.

*A* purchased four horses of *B*, which, previous to the purchase, he had for some
time kept at his own stable for *B*. At the time of the purchase no formal
delivery was made. Held, that a formal delivery was not necessary to make
the sale good against the creditors of *B*.

There is no rule which enables a court to say, from one or more particular acts of
intermeddling with property by a vendor after the sale, that there has been a re-
tention of possession by the vendor.

Where there has been such retention of possession it is conclusive evidence of a
colorable sale ; but whether in fact there has been such intention must always be
a question for the jury.

TRESPASS for taking and carrying away four horses claimed
to have been the property of the plaintiff, with a count in
trover. The defense set up was that the defendant was a
deputy sheriff, and attached them as the property of one Eli F.
Lake, who was the real owner of them, upon a writ of attach-
ment against him.

The case was tried to the jury in the superior court, upon
the general issue, with notice of the above defense, before
*McCurdy, J.*

On the trial the plaintiff offered evidence to prove, and
claimed to have proved, that about the middle of April, 1859,
the said Eli F. Lake, who was his nephew, came to Brookfield,
where the plaintiff lived, on a visit to his father ; that he

brought with him the horses in question, which were his own property, and for want of accommodation at his father's, where he stayed, he put them in the plaintiff's stable, where they remained until about the middle of May, during which time the said Eli drove, used and endeavored to sell them as his own ; that he at length offered to sell them to the plaintiff; that the plaintiff caused them to be appraised by a friend, and bought them, and paid for them at a fair price, *bona fide*, without any intention to defraud the creditors of said Eli, and that so they became his property ; that being in his stable and under his control there was no formal act of delivery to him, but that thenceforth the plaintiff kept them in his stable and field, and fed, drove, used and offered to sell them as his own ; that when they were taken by the defendant two of them had been turned by the plaintiff into his pasture, and one into his door yard, and the other was held by him by the bridle in the yard, having just been used by him; and that the actual possession of the horses had been in the plaintiff ever since the purchase. It was however admitted by the plaintiff that the said Eli, once accompanied by the plaintiff and twice alone, drove the horses for the purpose of showing them to certain persons with a view to selling them for the plaintiff, but it was claimed by the plaintiff that he did not use them except in these instances, and did not offer to sell them as his own. The defendant offered evidence to prove, and claimed to have proved, that at the time of the attachment the said Eli was indebted to the plaintiff in the attachment suit to the amount of about $2,000, and that the alleged sale to the present plaintiff was not made *bona fide*, but with an intent to defraud the said Eli's creditors, and that at all times after the alleged sale and before the attachment the said Eli drove the horses as before the sale, and offered to sell them at different places and to different persons with the assent of the plaintiff, and without suggesting that they were not his own property, or that they were the property of the plaintiff, and that the horses continued to be kept and fed as before the alleged sale, and that during this time the said Eli resided but a few rods from the plaintiff, and was a daily visitor at his house, and that

so the said Eli appeared to the public to be the owner of the horses as much after as before the sale ; and the defendant requested the court to charge the jury that if they should find the facts as so claimed to have been proved by him, it would be their duty, as a matter of law, to render a verdict for the defendant. The court instructed the jury that, to enable the plaintiff to recover, it was necessary for him to prove that the sale to him was for a fair consideration, *bona fide,* and without intention to defraud the creditors of the said Eli, and that the possession of the property was not left with the said Eli, or redelivered to him at any time after the sale, but that the same was delivered to the plaintiff and continued in him ; that the change of possession must have been an actual and substantial one, and as far as practicable a visible change of possession, and not a merely formal or colorable one ; that no particular act of delivery of the horses, such as leading them out of the stable and putting them back again, was necessary ; and that if the jury should find that the sale was made, and was of the character claimed by the plaintiff, and that immediately on the sale the horses were delivered to the plaintiff, and continued in his actual possession to the time of the taking, their verdict should be for the plaintiff, otherwise for the defendant ; and that the question whether there had been such a change of possession as had been stated by the court to be necessary, was wholly a question of fact for the jury.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial.

*Hawley* and *Taylor,* in support of the motion, cited *Osborne* v. *Tuller,* 14 Conn., 529 ; *Pettibone* v. *Stevens,* 15 id., 19, 26 ; *Kirtland* v. *Snow,* 20 id., 23 ; *Potter* v. *Payne,* 21 id., 361 ; *Beers* v. *Lyon,* id., 604 ; *Sturtevant* v. *Ballard,* 9 Johns., 337, 342 ; *Jackson* v. *Mather,* 7 Cowen, 301 ; *Paget* v. *Perchard,* 1 Esp., 205.

*Brewster,* with whom was *Averill,* contra, cited Just. Inst. Lib. 2, tit. 1, § 43 ; *Chapman* v. *Searle,* 3 Pick., 45 ; *Carrington* v. *Smith,* 8 id., 419 ; *Macomber* v. *Parker,* 13 id.,

183 ; *Shurtleff* v. *Willard*, 19 id., 209 ; *Nichols* v. *Patten*, 18 Maine, 231 ; *Johnson* v. *McDonald*, 9 Mees. & Wels., 600 ; *Sutton* v. *Sherer*, 1 Grant, (Penn.,) 207 ; *McVicker* v. *May*, 3 Penn. S. R., 224; *Jordan* v. *Frink*, id., 442 ; *Brady* v. *Haines*, 18 id., 113 ; *Hall* v. *Parsons*, 15 Verm., 358; *Mills* v. *Warner*, 19 id., 609; *Burrows* v. *Stebbins*, 26 id., 659 ; *Talcott* v. *Wilcox*, 9 Conn., 134 ; *Mills* v. *Camp*, 14 id., 219 ; *Meade* v. *Smith*, 16 id., 346 ; *Kirtland* v. *Snow*, 20 id., 23 ; *Tomlinson* v. *Roberts*, 25 id., 477 ; *Howe* v. *Keeler*, 27 id., 538.

HINMAN, C. J. The question in this cause respected the title to the horses which were the subject of the suit, and that depended upon the *bona fides* of a purchase of them by the plaintiff of his nephew Eli F. Lake, whom the defendant claimed owned them at the time he attached them, notwithstanding the supposed sale. At the time of the purchase the plaintiff was keeping the horses for his nephew, and the defendant claims that, because there was no formal delivery of the possession of them by the vendor to the purchaser, the sale was in point of law fraudulent and void against creditors. Of course no such delivery could have taken place without first taking the horses from the plaintiff's possession for the mere purpose of redelivering them to him again. But a merely formal act like this we presume would never occur between parties whose only object was to place the purchased property in the hands of the purchaser for his use. The act, therefore, would rather be evidence of caution, like the direction sometimes given to scriveners to draw up strong writings, which to say the least would furnish as much ground to suspect the honesty of a transaction as it would evidence of its *bona fides*. The court was correct therefore in informing the jury that no such act was necessary.

There was some evidence in the case going to show that the vendor after the sale exercised the same control over the horses that he did while he was their acknowledged owner. It was somewhat equivocal, but perhaps it would have justified the jury in finding that the sale was colorable merely. There is no rule, however, which enables a court to say, from one or

more particular acts of intermedling with property by the vendor after a sale, that they amount to the retention of the possession of it, so as to render the sale void as against creditors. The fact of such retention of possession is indeed conclusive evidence of a colorable sale. But whether in fact there has been such a retention of possession must always be a question for the jury. We perceive no error therefore in the course taken by the court in this case in submitting that question to the jury. It seems to have been fairly submitted to them, and we think their verdict must put an end to the case.

We do not therefore advise a new trial on any ground.

In this opinion the other judges concurred.