## L. V. MINX v. H. L. MITCHELL.

1. EXCHANGE OF LANDS — *Misrepresentation — Action — Competent Evidence.* At the trial of an action for damages caused by misrepresentation as to the location of a two-acre tract of land, it is competent for the plaintiff to show, that shortly after he traded a tract of farming land to the defendant for the two-acre tract, the defendant mortgaged the farming land for a large sum of money, as it tends to show motive by subsequent conduct.

2. CROSS-EXAMINATION — *No Prejudice.* At the trial of such an action, the defendant, testifying on his own behalf, was asked on cross-examination if he had not, about the time he made this exchange with the plaintiff, committed similar frauds against other persons, and he promptly denied that he had, and there was no other evidence introduced of similar frauds. *Held*, Whether this cross-examination was proper or not, the defendant was not prejudiced.

*Error from Lincoln District Court.*

THE opinion contains a sufficient statement of the facts.

*Ed. F. Coad*, and *Francis C. Downey*, for plaintiff in error. *Garver & Bond*, for defendant in error.

Opinion by SIMPSON C.: On the 10th day of March, 1887, Mitchell and Minx made an exchange of properties, whereby Mitchell conveyed to Minx one hundred and sixty acres of land incumbered with a mortgage of $300, and Minx conveyed to Mitchell two acres of ground adjoining the city of Lincoln, upon which there was a mortgage of $450, Minx paying Mitchell the sum of $150 as the difference between mortgages. When the trade was made, Minx pointed out what he claimed and represented to be the corners of the two-acre tract, and represented that it extended as far west as the east line of Second street extended; and Mitchell, relying on this representation, and believing it to be true, made the trade, induced by this statement. In a short time after the trade was consummated Mitchell discovered the true boundaries of the two-acre tract, and found that it did not extend to the line of Second street, but was east of such a line more than 100 feet; that it did not embrace certain high ground pointed out by Minx, and that it included very low ground.

On the 7th day of July, 1887, Mitchell commenced this action in the Lincoln county district court, to recover damages because of the false representations made concerning the location of the land traded him by Minx. At the October term, 1887, a trial was had by a jury, and a verdict and judgment rendered in favor of Mitchell for $417 and costs. The jury returned answers to the several questions submitted to them, as follows:

"1. Did the defendant, L. V. Minx, know the exact locality of the corners of the tract of land which he conveyed to plaintiff? A. Very nearly.

"2. How much land did defendant Minx agree to convey to the plaintiff? A. Two acres.

"3. How much land did defendant convey to plaintiff? A. Two acres.

"4. Was plaintiff duly informed as to the locality of the house on the tract conveyed, and if so, where was it said to be located with regard to the points of the compass? A. Yes; near the northeast corner.

"5. Was Second street extended at the time of the trade? A. No.

"6. Did defendant Minx represent to plaintiff that Second street was extended?    A. No.

"7. If you answer that Second street was not extended, did plaintiff know it at the time of the trade?    A. He did.

"8. What was the value on March 10, 1887, of the land conveyed to Mitchell by defendant?    A. $1,000.

"9. What was the value on March 10, 1887, of the tract conveyed to Mitchell taken together with the piece between such tract and Second street?    A. $1,400."

The defendant below now brings the case here for review, and insists upon the following assignments of error: First, that the court erred in permitting the plaintiff below to prove that shortly after he acquired the title to the land traded for from the plaintiff below, he mortgaged it for a large sum of money; second, the court erred in permitting a cross-examination of the defendant below that was not warranted in the examination in chief; third, that the court erred in refusing to give instructions numbered seventh, tenth and eleventh, requested by the defendant below; fourth, the verdict was not sustained by the evidence, and was excessive.    There are other causes that are suggested as sufficient for a reversal.

The plaintiff below introduced evidence over the objection of the plaintiff in error, showing that on the 23d day of March, 1887, the plaintiff in error had executed and caused to be recorded two mortgages upon the one hundred and sixty acres of land that he had received in trade from the defendant in error, for the sum of $1,500 and $150 respectively, with interest at 7 per cent. per annum.    It is now claimed that the admission of this evidence is material error, because it is not responsive to any of the issues made by the pleadings in the case; is a separate and distinct transaction having no connection with the trade; that its sole object was to create a prejudice against the plaintiff in error; and for other reasons. This trade was completed by an exchange of titles, on the 10th day of March, 1887, and the land traded by defendant in error to the plaintiff in error was incumbered by a mortgage

of $300, the payment of which was assumed by the plaintiff in error.

It is now said that the mortgage executed by the plaintiff in error on the 23d of March, thirteen days after the exchange was completed, by the delivery of the deeds, is competent to be admitted in evidence against the plaintiff in error for two reasons: First, to show a reason why Mitchell did not bring his action to rescind the contract of exchange; and second, as bearing on the good faith of Minx in the transaction; as tending to show that he had some reason for his hasty action incumbering the land received from Mitchell. As to the first reason given, we have no hesitation in saying that it is not good. Mitchell had the election either to bring the action he did, or to rescind the contract, if the property had remained in the exact condition it was at the time the exchange was made. The existence of the subsequent mortgage might necessarily compel him to resort to his action for damages, but no explanation was required of the jury why the action was instituted in this particular form. The sufficiency of the second reason must be determined by the application of certain principles of the law governing the admissibility of evidence. The evidence offered must correspond with the material and necessary allegations, and be confined to the point in issue. In this case the issue was this: Was the plaintiff below induced to make the exchange by the misrepresentation of Minx as to the corners, boundaries and location of the two-acre tract? This constituted the transaction that was wrongful. This transaction consisted of a group of facts so connected together as to be referred to by a single legal name, as a wrong or fraudulent misrepresentation to induce an exchange of land. Every fact that is a part of that transaction is a relevant one, and every other fact that tends to support or rebut a relevant fact, although the explanatory fact is not in issue, and although if it were not part of the same transaction it might be excluded, is admissible to prove the issue. In this case the evidence of the execution of mortgages by Minx to Neal and the Western Farm Mortgage Company, does not put in issue any question

affecting the validity of these mortgages, but it is sought to show the existence of these mortgages as a circumstance from which an inference might be drawn of the bad faith of Minx in making the trade with Mitchell, and then so placing the land received from Mitchell in such a condition that he would encounter legal difficulties in his attempt to redress the wrong. Now, whether any particular fact, such as the existence of these mortgages, is or is not a part of the same transaction as the facts in issue, is a question of law; and the exact question to be determined by the court is, does the existence of these mortgages have the effect or tendency to induce in the mind an affirmative persuasion of the existence of the main fact in issue, the misrepresentations as to boundaries and location of the two-acre tract? It is beyond dispute on these facts presented by this record that as the execution of the mortgages did not occur until about two weeks after the exchange of land, the fact of the existence of the mortgages had no necessary connection with the group of facts constituting the wrong complained of. It is not a part of the *res gestœ*. It did not influence or induce the exchange, and hence the existence of the incumbrance is not a relevant fact in the sense that it so related to the fact of misrepresentation, that according to the common course of events, it renders probable the fact of misrepresentation. Is the existence of these mortgages admissible as showing motive by subsequent conduct? In cases of this character, where fraud is alleged, it is always permissible to prove every act of the party charged, connected in any way with the subject-matter of the fraud, and sometimes the subsequent action of the party more clearly demonstrates the fraudulent intent than any or all of the circumstances that occurred prior to or at the particular time of the transaction that is alleged to be fraudulent.

1. Exchange of lands—misrepresentation—action—competent evidence.

As to the subsequent conduct, the case of *Banfield v. Whipple*, 10 Allen (Mass.), 29, is the nearest approach to the case at bar that we have noticed. That was an action to recover damages for an injury to a hired horse by immoderate driving,

and in the course of the trial it was held that evidence was competent to prove that the defendant, immediately after the injury charged, made an assignment of all his property. This ruling is affirmed by the supreme court, Justice Gray saying only this much in the opinion: "The single exception taken to the admission of evidence relates to the assignments made by both defendants to all of their property on the day after the accident. But these assignments, made simultaneously, without any proof of consideration, were some evidence that the defendants were conscious of liability, and endeavored to escape from it, the weight of which was to be determined by the jury." It will be observed that while this case states no principle or gives no rule to govern the admissibility of such evidence, it is decided upon the general theory heretofore referred to, that in cases of fraud, every act of the party charged in connection with the subject-matter of the fraud may be scrutinized. It is true that the execution of the mortgages occurred some time after the trade was made, and probably on this account the fact was not entitled to much weight; but this was a question for the jury. We are inclined to think that the evidence was competent to go to the jury for what it was worth, the other party having the right to make any such explanation of the existence of the mortgage as the facts would justify.

The next assignment of error is based upon the cross-examination of the plaintiff in error, when testifying on his own behalf on the trial. Counsel for plaintiff below asked him if he did not, about the time he made the trade with Mitchell, take Wagley out into the country and show him a nice farm and sell it to him, and then make a deed to a rough piece of hilly land. He was then asked if there were not other trades in which he was interested wherein he showed the wrong piece of land. He answered all questions of this character in the negative, but admitted that in the instance of the sale to Wagley, he had by mistake shown the wrong land. It is claimed that this cross-examination was not warranted by the examination in chief; that it was incompetent, and its

effect highly prejudicial.   There is a number of very respectable authorities that sustain the proposition that on the trial of an issue wherein the *quo animo* of the transaction is the fact to be arrived at, it is competent to show that the party accused was engaged in other similar frauds at or about the same time.   The transactions must be connected in point of time, and be so similar in their other relations that the same motive may be reasonably imputed to them all. (*Hall v. Naylor*, 18 N. Y. 588; *McKenney v. Dingley*, 4 Greenl. 172; *Cary v. Hotailing*, 1 Hill, 311; *Ross v. The State*, 62 Ala. 224; *Street v. The State*, 7 Tex. App. 5; *Butler v. Watkins*, 13 Wall. 456; *Map Co. v. Jones*, 27 Kas. 177.)

The plaintiff below, for some reason, chose to attempt to prove similar frauds by the cross-examination of the defendant below.   Proper objections were made and all exceptions saved to this mode of cross-examination.   As there was a specific and distinct denial by Minx of other similar fraudulent practices, it is perhaps unnecessary for us to consider any feature of this cross-examination except the one that it caused a prejudice in the minds of the jurors against him.   In order to cause a reversal, it must be shown to us affirmatively that prejudice was created in the minds of the jurors by this cross-examination, or the mode, manner and subject of the cross-examination must be such that we would irresistibly infer that prejudice was created.   It has been said time and again by this and other courts, that when a party charged with fraud is being examined on his own behalf, the greatest latitude will be allowed in the cross-examination, and assuming that this was not proper examination, it seems to us that the prompt denial of the plaintiff in error that he had shown men to whom he sold or was endeavoring to sell land, the wrong tract, resulted in his favor.   The plaintiff below asked these questions in such a manner that probably he would not be allowed to contradict the answers to them, so that on the whole record it affirmatively appears that the defendant below had not committed similar frauds at or near the same time.   We are at a loss to dis-

2. Cross-examination—no prejudice.

cover how he was prejudiced, and hence cannot reverse for this reason.

We can say generally that the instructions given were a very fair statement of the law applicable to the state of facts presented to the jury, and that we do not find that when they are all considered together, any reasonable criticism can be made. The measure of damages was correctly stated in substance, and not with the ambiguity that counsel for plaintiff in error suppose. The verdict is amply supported by the evidence in every particular.

We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.