(106 N. W. 188.)

---

McCORMICK HARVESTER MACHINE COMPANY v. M. W. CALDWELL, DEFENDANT, CITIZENS' BANK OF DRAYTON, N. D., RESPONDENT, AND JOHN H. HOGG, GARNISHEES.

Opinion filed February 2, 1906.

**Bill of Sale as Security — Fraudulent Conveyance — Future Advances.**

1   A bill of sale of property absolute in terms, but given as security for a present indebtedness and for future advances, is not fraudulent as against creditors as a matter of law.

**Garnishment — Evidence.**

2.   Evidence considered, and found to show that there was no money or property belonging to defendant in the garnishee's possession when the garnishee summons was served.

Appeal from District Court, Pembina county; *Kneeshaw, J.*

Action by the McCormick Harvester Machine Company against the Citizens' Bank of Drayton. Judgment for defendant, and plaintiff appeals.

Affirmed.

*W. B. Kellogg* and *Charles F. Templeton,* for appellant.

A debtor cannot, as against other creditors, transfer his property to one creditor, by an instrument purporting to convey an absolute title, but in fact as security; such conveyance, irrespective of intent, is a fraud on creditors. First Nat. Bank v. Comfort, 4

Dak. 167, 28 N. W. 855; Lukins et al. v. Aird et al., 6 Wall. 78, 18 L. Ed. 750; Switz v. Bruce, 20 N. W. 639; Chenery v. Palmer, 6 Cal. 119; section 3849, Rev. Codes 1899; Coburn v. Pickering, 3 N. H. 415; Mitchell et al. v. Sawyer et al., 5 N. E. 109; Smith v. Conkwright, 28 Minn. 23, 8 N. W. 876; Kissam v. Edmonston, 1 Ired. Eq. 180.

Where a secret trust is established, an intent to defraud need not be proved—it is a legal inference. Coburn v. Pickering, supra; Phelps v. Curts, 80 Ill. 112; Powers v. Alston, 93 Ill. 587; Emerson v. Bemis, 69 Ill. 537; Moore v. Wood, 100 Ill. 454; Chenery v. Palmer, supra.

A trust is attached to the proceeds of property when converted in money. Wait on Fraud Con., section 177; Ferguson v. Hillman, 12 N. W. 389.

Where property of defendant is shown to be in garnishee's hands, it is presumed to continue there until the contrary is shown. 22 Am. & Eng. Enc. Law, 1243; Farr v. Payne, 40 Vt. 615; Cardee v. Prim, 52 Mo. App. 102; Northrop v. Knott, 114 Cal. 612, 46 Pac. 599; Diel v. Stegner, 56 Mo. App. 535; Love v. Edmonston, 5 Ired. L. 354; Kidder v. Stevens, 60 Cal. 414; Smith v. Railroad Co., 43 Barb. 225; Laughlin v. C. & N. W. Railway Co., 28 Wis. 204; 1 Rice on Evid., section 42; Rev. Codes 1899, section 5413, subdivision 32.

Non-leviable assets can be reached by garnishment. 9 Enc. Pl. & Pr. 847; First Nat. Bank v. McDonald Mfg. Co. et al., 67 Wis. 373, 28 N. W. 225; LaCrosse Nat. Bank v. Wilson, 74 Wis. 391, 43 N. W. 153.

Change of possession does not purge the transaction of its fraudulent character. Blakeslee v. Rossman, 43 Wis. 116; Stein et al. v. Munch, 24 Minn. 390.

*Robert Ferguson,* for respondent. *M. Brynjolfson* and *Jeff M. Myers,* of counsel.

No intent to hinder, delay or defeat creditors being shown, the same must not be presumed. Allan et al. v. Smith et al., 129 U. S. 465, 9 Sup. Ct. Rep. 338, 32 L. Ed. 732; Smith v. Collins, 94 Ala. 394, 10 South. 334; Rochester v. Sullivan, 11 Pac. 58; Hempstead v. Johnston, 18 Ark. 123, 65 Am. Dec. 458; Schroeder v. Walsh, 120 Ill. 403, 11 N. E. 70; Prichard v. Hopkins, 52 Iowa, 120, 2 N. W. 1028; Graig v. Fowler, 59 Iowa, 200, 13 N. W. 116; Adams v. Ryan, 61 Iowa, 733, 17 N. W. 159; Gleason et al.

v. Wilson et al., 48 Kan. 500, 29 Pac. 698; McMillan v. Edfast, 50 Minn. 414, 52 N. W. 907; Landauer et al. v. Mack et al., 38 Neb. 8, 57 N. W. 555; Fisher v. Dickenson et al., 84 Va. 318, 4 S. E. 737; Rice v. Jerenson, 54 Wis. 248, 11 N. W. 549.

Fraudulent intent must be shown by direct evidence or circumstances which the law says are conclusive evidence of it. Rochester v. Sullivan, 11 Pac. 58; Riethmann et al. v. Dodsman, 23 Colo. 202, 46 Pac. 684; Mathews v. Reinhardt, 149 Ill. 635, 37 N. E. 85; Allen v. Wegstein, 69 Iowa, 598, 29 N. W. 625; Pidock v. Voorhies, 84 Iowa, 705, 42 N. W. 646, 49 N. W. 1038; Long v. West, 31 Kan. 298, 1 Pac. 545; Gleason v. Wilson, supra; Hasie v. Connor, 53 Kan. 713, 37 Pac. 128; Foster v. Hall, 12 Pick. 89, 22 Am. Dec. 400; Kipp v. Lamoreaux, 81 Mich. 299, 45 N. W. 1002; McMillan v. Edfast, 50 Minn. 414, 52 N. W. 907; Landauer v. Mack, supra; Columbus Watch Co. v. Hodenpyl et al., 135 N. Y. 430, 32 N. E. 239; Evans v. Rugee, 57 Wis. 623, 16 N. W. 49; Shores v. Doherty, 65 Wis. 153, 26 N. W. 577.

If circumstances point equally to honesty of purpose and fraudulent design, the former construction must be given. Gregg v. Sayre, 8 Pet. 244, 8 L. Ed. 932; Alabama L. Ins. Co. v. Pettway, 24 Ala. 544; Stiles v. Lightfoot, 26 Ala. 443; Thames v. Rembert, 63 Ala. 561; Dardenne v. Rardwick, 9 Ark. 482; Erb v. Cole, 31 Ark. 554; Bowden v. Bowden, 75 Ill. 143; May v. Gulliman, 105 Ill. 272; Lyman v. Cessford, 15 Iowa, 229; Burleigh v. White, 64 Me. 23; Whitfield et al. v. Stiles et al., 57 Mich. 410, 24 N. W. 119; Bear's Estate, 60 Pa. St. 430; Norton v. Kearney et al., 10 Wis. 443.

Bills of sale given as security are not per se void as to creditors. Chickering v. Hatch, 3 Sumn. 474; McClure et al. v. Smith et al., 14 Colo. 297, 23 Pac. 786; Ross v. Duggan, 5 Colo. 100; Cathcart v. Grieve et al., 104 Iowa, 330, 73 N. W. 835; Fuller v. Griffith et al., 91 Iowa, 632, 60 N. W. 247; First National Bank of Peoria v. Jaffray et al., 41 Kan. 694, 21 Pac. 242; Emmons v. Bradley, 56 Me. 333; Stevens v. Hinckley, 43 Me. 440; Rawson v. Plaisted, 151 Mass. 71, 23 N. E. 722; Muchmore v. Budd, 53 N. J. Law, 369, 22 A. 518; Moore v. Roe, 35 N. J. Eq. 90; Rigney v. Talmadge, 17 How. Pr. 556; Haseltine et al. v. Espey et al., 10 Pac. 423; Gibson v. Seymour, 4 Vt. 518; Parker v. French, 18 Vt. 460; Bigelow v. Topliff, 25 Vt. 273; Samuel v. Kittenger et al., 6 Wash. 261, 33 Pac. 509; McFarlane v. Louden, 99 Wis. 620, 75 N. W.

394; Rock v. Collins, 99 Wis. 630, 75 N. W. 426; Bump Fraud Con. (3d Ed.) 41; Waite Fraud. Cov. 238.

The indebtedness to the bank, made up of its original claim, with others assumed by it, though constituting an antecedent indebtedness, affiorded a sufficient consideration for the sale. Nat. Bank v. Dickinson, 107 Ala. 265, 18 So. 144; Boston Marine Ins. Co. v. Proctor et al., 168 Mass. 489, 47 N. E. 414; Dick v. Jackman, 37 S. W. 344; Davenek v. Kutzer, 43 S. W. 541; Rickman v. Miller, 18 Pac. 304.

That the transaction operated to prefer certain creditors to the exclusion of others does not invalidate the sale. Rev. Codes 1899, section 5050; Cutter v. Pollock et al., 4 N. D. 205, 59 N. W. 1062.

MORGAN, C. J.   The plaintiff brought an action against defendant Caldwell to recover upon a promissory note given by him to the plaintiff. At the time of issuing the summons in the action, the plaintiff also commenced a garnishee action or proceeding against the Citizens' Bank of Drayton and John R. Hogg, claiming that they had money or property in their hands belonging to the defendant. The plaintiff instituted the garnishee action or proceeding by filing and serving the affidavit prescribed by section 5383, Rev. Codes 1899, and the garnishee answered by serving their affidavits prescribed by section 5389, Rev. Codes 1899, in which they denied having any money in their hands belonging to the defendant. The plaintiff took issue upon the allegations of this affidavit, pursuant to section 5393, Rev. Codes 1899. The sole issue for trial was whether the garnishees had any money or property in their hands on November 30, 1901; that being the day on which the garnishee summons was served. Before the trial the plaintiff secured a judgment against Caldwell upon the promissory note described in the complaint, and the judgment roll was received in evidence at the trial. The district court made findings of fact and conclusions of law in favor of the garnishees, and judgment was entered dismissing the garnishee action. The plaintiff has appealed from the judgment, and asks a review of the entire case, under section 5630, Rev. Codes 1899.

There is no practical dispute as to the facts on which the judgment is based. The appeal is founded more particularly upon the conclusions of law which the court made from the facts. The principal facts upon which the garnishee action is based are the following: On and prior to July 6, 1901, the defendant was indebted

to the garnishee bank in the sum of about $3,550. On that day the defendant executed and delivered to the bank a bill of sale absolute in terms, but in reality as security only, upon about 560 acres of growing flax belonging to the defendant. Under parol agreement made when the bill of sale was executed, the bill of sale was to be security for said sum of $3,550, and for such future advances as might thereafter be made by the bank to the defendant. The bill of sale was filed in the office of the register of deeds. Thereafter advances were made by the bank from time to time and notes taken for such advances at times, and sometimes such advances were evidenced by cash slips kept by the bank. Some of these advances were temporary loans made for a short time and paid promptly, and the slips returned or canceled. The defendant retained complete possession of the crop of flax and harvested it and delivered it for shipment in the bank's name to Duluth, and turned over all the shipping bills to the bank, and the proceeds of the flax were remitted to the bank. After the bill of sale was executed and delivered, the defendant made orders upon the bank for the payment of certain claims owed by him to other parties, and these orders were accepted by the bank and the sums paid by it to such persons out of the proceeds of the flax. The first shipment of flax was made on the 19th day of October, 1901. The next shipment was made on or about November 19, 1901. The proceeds of each shipment were remitted to the bank and aggregated about $5,148. The bank paid out upon the Caldwell claims, orders and liens due to other persons the sum of $1,933, and applied the balance of the money in its hands upon its own debt against Caldwell. This left Caldwell still owing the bank the sum of $1,829. The garnishee summons was served on the bank on November 30, 1901.

The plaintiff's contentions in reference to this transaction are: (1) That the bill of sale was void as to creditors as a matter of law, for the reason that it constituted a secret trust in favor of the defendant and in favor of other creditors; (2) that the bank had in its possession money belonging to the defendant on the day that the garnishee summons was served. Upon the first contention appellant claims that the bill of sale was absolutely void as a matter of law without regard to the real intent of the parties in the execution thereof. The basis of such contention is the claim that such contracts create a secret trust in favor of the

debtor, which constitutes a fraud upon the other creditors. In the case at bar there was no such trust existing. It was an agreed transaction of security for a present debt and for debts to accrue. The disposition, control and possession of the property was in the debtor. Before any proceedings were taken by any creditor, the security property was changed into money by act of the debtor, and the proceeds came into the bank's hands under direction of the debtor. When the bill of sale was executed, no other creditors were secured thereby. It is sufficient to say that a bill of sale absolute in form, but in equity a mortgage, does not render it void as security for present indebtedness or indebtedness to accrue. The fact that a bill of sale or deed absolute in form is given does not of itself make it void as a matter of law. It may be a fact to be considered in connection with other facts to determine whether the transaction was fraudulent in fact. But standing alone it is not given that effect when the debtor has no rights under it save that of paying his debts, and thereby releasing the property from the lien of the mortgage, and the creditor has no rights thereunder except to hold the property as security. In this case the bank made no claim to the property except for security purposes. There is nothing in such a transaction that creditors can justly complain of. We have recently considered and decided a similar case involving the giving of a deed on land absolute in terms, but in fact a mortgage. In that case the same contentions were made as in this, and the case of Newell v. Wagness, 1 N. D. 62, 44 N. W. 1014, was relied on. That case is distinguishable from these cases, as was pointed out in the case referred to. Merchants' State Bank v. Tufts (N. D.) 103 N. W. 760. What was said in that case is applicable here and decisive of the case. In addition to the authorities cited in that case, the following also bear upon the question: McFarlane v. Louden, 99 Wis. 620, 75 N. W. 394, 67 Am. St. Rep. 883; Rock v. Collins, 99 Wis. 630, 75 N. W. 426, 67 Am. St. Rep. 885; Ross v. Duggan, 5 Col. 85; Cathcart v. Grieve, 104 Iowa, 330, 73 N. W. 835; Bank v. Jaffrey, 42 Kan. 694, 19 Pac. 626; Rawson v. Plaisted, 151 Mass. 71, 23 N. E. 722; Samuel v. Kittenger, 6 Wash. 261, 33 Pac. 509.

It is not seriously contended that the transaction was fraudulent in fact. If it were, the contention would be futile. On a careful review of all the evidence it is amply shown that the trans-

action was made in good faith, and the trial court so found. It is claimed that the bank had money in its hands which was unappropriated and belonged to the defendant, when the garnishee summons was served upon it. Whatever money it may have had in its possession at that time was paid to it in satisfaction of the notes and indebtedness for which the bill of sale was security. The mere fact that the notes had not been marked paid is of no moment whatever. The notes were paid by the payment of the money to the bank for that purpose, and stamping the notes as paid added nothing to the effect of paying the money into the bank for the particular purpose of liquidating, to the amount of the payments. the defendant's debts. Plaintiff complains that the disclosure made by the garnishee is evasive, indefinite and unsatisfactory, and should not be held sufficient to warrant a dismissal of the proceedings. The objection made as to the insufficiency of the garnishee's evidence is that the sums paid to various persons out of the proceeds of the flax crop is not specifically given; the names of the persons to whom paid nor the amounts paid to each is not given. The sum total paid out upon orders or directions from Caldwell is given. The items making up the sum total paid out are very numerous. The garnishee's books showed precisely what amounts were paid out and to whom paid. The books were in the courtroom at the trial on plaintiff's subpoena, and were subject to examination. The cashier at the bank at the time these various payments were made was a witness. He was examined at length by plaintiff, and again cross-examined at great length by plaintiff. We do not think that his evidence shows any desire to evade a full answer to all questions, nor does it show a desire to conceal anything. He was not asked to give the names of the persons to whom the money was paid. We deem the showing made by the bank free from the objection urged against it. The evidence shows that the bank paid out all money that came into its hands before the garnishee summons was served, and that it was paid on the defendant's orders. It also shows that the proceeds of the flax crop did not come up to the expectations of Caldwell or of the bank. Hence, when these proceeds had all been disbursed by the bank, there was still due the bank from Caldwell the sum of $1,829. The action of the bank in endeavoring to collect this sum gives rise to the dispute as to the legality of what is called the "Bottineau Transaction." Caldwell owned some

property in Bottineau county on which the bank had a mortgage. The bank sent an attorney there on November 27, 1901, to collect that sum. The attorney also represented two other creditors of Caldwell. He was accompanied by one Vestre, another creditor. Before the attorney arrived at Bottineau, Caldwell had made a bill of sale of some horses and other property to the bank, but Caldwell was to retain the use and possession of the property sold. The attorney refused to accept a bill of sale, unless it was to be an absolute sale, accompanied by immediate delivery. After lengthy negotiations, Caldwell agreed to sell the property absolutely in full payment of the bank's indebtedness, as well as that of Vestre and the other creditors represented by the attorney. All of these creditors receipted in full to Caldwell for their claims, and Caldwell delivered the property to the bank. The creditors agreed among themselves to divide the proceeds of the property after sale in the proportion of their several claims.

There is no room for doubt as to the character of this transaction up to this time. It was a completed sale of the property to the bank in consideration of the release of the claims of these creditors against Caldwell. It is claimed that subsequent events show that Caldwell still retained an interest in the property. On December 9th Caldwell asked leave of the bank to take the horses to Duluth and use them there during the winter. This request was refused. The bank was desirous of disposing of the horses to get its money and stop the expense of keeping them. Caldwell insisted that they could be sold to better advantage in Duluth, and guaranteed that they would bring more than $2,100 net in Duluth. This was more than had been offered for them at Drayton. The bank and Caldwell reached this agreement: The bank was to employ an agent to take the horses to Duluth for sale, and Caldwell was to go there also, but not as agent, or on request of the bank, or at the bank's expense. If the horses were sold at Duluth for $2,000, over and above the expense of taking them there, Caldwell was to have all over that sum. They were sold at Duluth for $2,000, and Caldwell got nothing out of them. This was a new contract and had nothing to do with the original sale of November 27th. In effect the bank agreed to sell the horses to Caldwell for $2,000 net. Caldwell made no claim that he had any interest in the horses at that time. This transaction has no weight as evidence that the sale was originally as security. It corroborates the evi-

dence that the transaction was an absolute sale. On December 21st Caldwell telegraphed the cashier of the garnishee bank from Duluth as follows: . "Can you send me one hundred dollars to go west with, haven't a dollar. Answer Meirs Hotel." On consultation with the other creditors who had become interested in the property sold to the bank, they agreed to send him $100, each to pay a portion thereof; and the money was sent. There is no evidence that it had any connection with the sale of the horses at all. The cashier and others of the contributors testify that it was sent to him in charity. Whatever the motive was, the evidence does not show that it was sent because Caldwell had any interest in the horses, and the mere fact of sending the money does not show that he had any interest in the horses. When it was sent there was nothing due to Caldwell from the bank. Our conclusion is that there was no money or property belonging to Caldwell in the garnishee's hands when the summons was served upon it, and that the transaction was not tainted with actual or constructive fraud. Whether a garnishee action or proceeding is properly triable under section 5630, Rev. Codes 1899, and whether either party may demand a jury trial in such an action, was not raised in this court, nor considered.

The judgment is affirmed. All concur.