## LOVE *et al.* v. SCHMIDT.

No. 513.    Opinion Filed July 12, 1910.

(110 Pac. 665.)

1.    **FRAUDULENT CONVEYANCES — Sale by Joint Owner of Personalty—Failure to Take Possession.** Where a joint owner of personalty which is in the possession of another joint owner sells his interest, the purchaser's failure to take possession does not as against execution creditors of the seller avoid the sale, under Wilson's Statutes of Oklahoma section 2775 providing that every transfer of personal property by a person in possession or control of the property shall be conclusively presumed to be fraudulent if not followed by actual and continued change of possession.

2.    **FRAUDULENT CONVEYANCES—Change of Possession—Sufficiency Against Creditors.** H. J. purchased of H. F. his undivided one-fourth interest in 100 acres of wheat, in which D. S. owned the remainder, stacked on premises rented by H. J. from D. S. At the time of the purchase no formal delivery was made. Held, that formal delivery was not necessary to make the sale good as against execution creditors of H. F.

(Syllabus by the Court.)

*Error from District Court of Kingfisher County; A. H. Huston, Judge.*

Action by Henry J. Schmidt against J. P. Love and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Robberts & Curran* and *H. M. Bear,* for plaintiffs in error.

*Geo. L. Bowman,* for defendant in error.—Citing: *Walters v. Ratliff* (Okla.) 61 Pac. 1070; *Yank v. Bordeau* (Mont.) 58 Pac. 42; *Banning v. Morleau* (Cal.) 32 Pac. 772; *Lake v. Morris,* 30 Conn. 201.

TURNER, J.    This is an action in replevin commenced by Henry J. Schmidt, defendant in error, before a justice of the peace in Kingfisher county to recover from J. P. Love, sheriff, and his deputy, plaintiffs in error, 117½ bushels of wheat. There was trial to a jury and judgment for plaintiff, from which de-

fendants appealed to the district court.    There on trial anew to
the court plaintiff again recovered judgment and defendants bring
the case here.

Love and his deputy claim right to possession of the wheat
by virtue of an execution levied thereon by creditors of Henry F.
Schmidt.    Schmidt claims title thereto by purchase from Henry
F. Schmidt prior to the levy of said execution.    The evidence tends
to prove that one David Schmidt was the owner of the farm on
which this wheat grew during the crop season of 1906; that Henry
J. Schmidt, plaintiff below, had rented said farm from said
Schmidt for that year and lived thereon with his family; that
Henry J. and Henry F., his nephew, a single man who lived there
occasionally, cropped together thereon; that Henry F. at the time
of the sale to Henry J. was the owner of an undivided one-fourth
interest in 100 acres of wheat grown on said place, in which the
landlord, David Schmidt, was the owner of the remaining three-
fourths, that Henry F., being at the same time a judgment debtor
of Cochran & Dohe and in debt to Henry J., and threatened with
the levy of an execution, sued out on said judgment in the hands
of the said Love as sheriff; in payment of the debt due Henry J.,
sold, and by bill of sale dated July 24, 1906, conveyed, him his un-
divided one-fourth interest in said 100 acres of wheat, which at
that time had been cut by Henry J., and on July 26, 1906, the
date of the levy on said interest therein of Henry F., stacked on
the premises and not in his actual possession.    Subsequently said
interest was sold under said execution while yet in the stack but
later the entire crop was threshed and put in the granary by Henry
J., who, when said interest was taken possession of by plaintiffs
in error to turn over to the purchaser under said execution, brought
this suit.    Plaintiffs in error contend that, as the facts show there
was no immediate change of possession from Henry F. to Henry
J. of said undivided interest in the wheat, said sale is conclusively
presumed to be fraudulent as to these creditors, and that the
court erred in failing to so hold.    He relies on Wilson's St. Okla.
§ 2775, which reads:

"Every transfer of personal property * * * is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession * * *"—

and on *Walters v. Ratliff*, 10 Okla. 274, 61 Pac. 1070, and other cases to the effect that such change of possession is necessary to pass the title as against creditors where the vendor is the owner of the entire chattel and in possession or control thereof at the time of the sale. On the other hand, it is contended that here a different rule applies for the reason that the evidence tends to prove, and the court in finding generally for plaintiff necessarily found, that David Schmidt and Henry F. owned all the wheat jointly, that the former at the time of the sale of the interest of Henry F. was in possession of the whole of it, and that an actual delivery was not necessary to pass the title to that interest as against the creditors of the vendor. In this we concur. Freeman on Judgments, § 167, states the rule thus:

"If A. and B. together own personal property, of which A. is in actual possession, and B. sell his moiety to C., the possession of A. immediately becomes the possession of C. also. Therefore, being at once by presumption and construction of law put in possession as tenant in common with A., it is not necessary that C. should take actual possession with A. to make his purchase good under the statute of frauds as against the creditors of B. If A., the co-tenant in possession, had sold his interest, then the sale should have been followed by an actual change of possession, because there was no co-tenant whose actual possession could have operated for the benefit of A.'s vendee."

And in section 153 of Freeman on Executions says:

"The sale by one of several joint owners also furnishes an exception to the rule that there must be a change of possession. If the co-tenant selling is in the sole possession, he ought to give possession to his vendee; but, if the other co-tenants are in possession, the vendor has no right to take it from them. He may therefore, from necessity make a valid sale without placing the property in the custody of his vendee."

In *Yank v. Bordeau, Con.,* 23 Mont. 205, 58 Pac. 42, 75 Am. St. Rep. 522, plaintiff, claiming to own an undivided one-half interest in certain ores treated at a certain smelter, brought his action for damages against defendant, a constable, who had levied upon and seized such interest on execution against the property of P., T. and P.   The facts were that on March 11, 1896, H. and his associates became lessees for 90 days of a certain mining claim. On that day they entered into a written contract with said P., T. and P., whereby it was agreed that he and his associates should furnish the labor and operate the mine, and that P., T. and P. should furnish all supplies and materials necessary to do so, and that the net proceeds of the ore after milling and reduction should be divided equally.   From March 12 to May 1, 1906, H. and his associates were in actual possession of and working the claim, and whatever possession P., T. and P. had was merely constructive. On April 29, 1906, P., T. and P., for value, sold and assigned to plaintiff all their right, title, and interest in and to 20 tons of certain ore then contained in the orehouse and bins of and extracted from said mine, and assigned to the purchaser their right to share in and to the net proceeds of the same as soon as it should be milled or worked, as their interest appeared in said contract.   While representatives of both co-owners and plaintiff's agent went to the orehouse and identified and examined the ore in the bins, plaintiff did not take actual possession thereof.   The ore was not susceptible of fair division.   Afterwards it was delivered to the seller, and while in its possession defendant as constable levied upon one-half of the net proceeds of the ore as the property of P., T. ,and P. under execution against their property upon judgment rendered to enforce claims in existence when the assignment to plaintiff was made, and collected of the smelting company the one-half proceeds of the ore as belonging to P., T. and P., for which plaintiff brought suit after demand therefor made.   The governing statute was the same as ours, *supra,* which the trial court held applied to the facts of the case.   The Supreme

Court on appeal held this to be error and reversed the case and in passing said:

"The presumption does not arise from want of immediate delivery unless the seller or assignor had at the time possession or control of the thing sold or assigned. Pohndorf, Thompson, and Pearson were the owners, in common with Hughes and his associates, of certain ore, in bins situate upon the West Elba mining claim. They transferred their title and interest to the plaintiff. At the time of the transfer they were not in possession or control of the ore, but their co-owners were then lawfully in the actual possession and control of the common property, and so remained until it was sent to the smelter for milling and reduction. Under such circumstances, a sale by a tenant in common may not be avoided by creditors upon the ground that the chattel was not delivered to the purchaser. * * *"

We are therefore of opinion that as Henry F. had not, at the time of the sale of his interest therein, possession, or control of the joint property, immediate delivery and change of possession of the property sold was not necessary to pass the title to this vendor. See, also, *Brown v. O'Neal,* 95 Cal. 262, 30 Pac. 538, 29 Am. St. Rep. 111; *Haskell v. Greely,* 3 Me. 425; *Brown v. Graham,* 24 Ill. 628.

There is another view of the evidence reasonably tending to support the judgment of the trial court, and that is that, as Henry J. had permitted David Smith and Henry F. to stack their joint wheat on his premises, a formal delivery of the interest of Henry F. therein to him as vendor would be not only impracticable, but a vain act and unnecessary to make a sale to him thereof good as against the creditors of Henry F. In *Lake v. Morris,* 30 Conn. 201, plaintiff at the time of the purchase was keeping the horses of his nephew, Lake, in his stable. The defendant claimed that because there was no formal delivery of possession of them by the vendor to the purchaser the sale was in point of law fraudulent and void against creditors, but the court held otherwise, and, in effect, said that no such delivery could have taken place without first taking the horses from the plaintiff's possession for the mere purpose of redelivering them to him, and that the trial court was

.correct in instructing the jury that no such act was necessary. And so we say here that it would not only have been impracticable to carve out of this wheat in the stack the interest of Henry F. for the purpose of delivering it to plaintiff, but, had it been done, it would have been for the sole purpose of permitting him to accept and stack it again on the premises, which would have been a vain act and unnecessary to pass the title.

In either view of the case, the judgment of the trial court must be affirmed; and it is so ordered.

All the Justices concur.