## C. S. MOORES, E. A. Lathrop, and M. B. Cassell v. GLEN E. TOMLINSON and Charles Tomlinson.

(157 N. W. 685.)

**Pleadings — answer — new matter — reply — court — order of — counterclaim — exception — deemed controverted — direct denial — avoidance — evidence.**

1. Under the provisions of §§ 7467–7477 and 7452, Compiled Laws 1913, a plaintiff is not required to reply to new matter in an answer not constituting a counterclaim, except by order of the court; but every allegation of new matter in the answer, not constituting a counterclaim is deemed controverted by the plaintiff as upon a direct denial or avoidance by operation of law, and the plaintiff may introduce evidence of any fact tending to deny or avoid the new matter set forth in the answer.

**Personal property — sale of — vendor — possession — must be accompanied by — retained by vendor — fraud — presumption — creditors.**

2. Following Drinkwater v. Pake, ante, 190, it is held that under the provisions of § 7221, Compiled Laws, every sale made by a vendor of personal property in his possession or under his control, unless accompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold, is presumed to be fraudulent and void as against creditors of the vendor, unless those claiming under the sale make it appear that the same was made in good faith and without any intent to hinder, delay, or defraud such creditors.

Opinion filed April 10, 1916.

From a judgment of the District Court of Steele County, *Pollock,* J., defendants appeal.

Affirmed.

*W. J. Courtney,* for appellants.

Fraud is a question of fact in this jurisdiction, and must be pleaded. The bill of sale upon which appellants relied could only be impeached

for fraud, and since this was not pleaded, the court's ruling thereon was error. Harkins v. Cooley, 5 S. D. 227, 58 N. W. 560; Cobb v. Cole, 55 Minn. 235, 56 N. W. 828, 51 Minn. 48, 52 N. W. 985; 8 Enc. Pl. & Pr. p. 945, notes 1 and 2; State ex rel. Dorgan v. Fiske, 15 N. D. 219, 107 N. W. 191; Dalrymple v. Security Land & T. Co. 9 N. D. 306, 83 N. W. 245; Paulson v. Ward, 4 N. D. 103, 58 N. W. 792; Rundle v. Delaware & R. Canal Co. 14 How. 100, 14 L. ed. 343; Patton v. Taylor, 7 How. 132, 12 L. ed. 637; Voorhees v. Bonesteel, 16 Wall. 16, 32, 21 L. ed. 268, 271.

A bill of sale as security is good. McCormick Harvester Mach. Co. v. Caldwell, 15 N. D. 132, 106 N. W. 122.

A creditor cannot attack any transaction for fraud, unless the property transferred was such as he could seize to satisfy his claim. Cresswell v. McCaig, 11 Neb. 222, 9 N. W. 52; Simon v. Levy, 36 Fla. 438, 18 So. 777; Perisho v. Perisho, 71 Ill. App. 222; Pell v. Tredwell, 5 Wend. 661; McDonald v. O'Neil, 161 Pa. 245, 28 Atl. 1081; Zuver v. Clark, 104 Pa. 222; Oul Nat. Bank v. Heckman, 148 Ind. 490, 47 N. E. 953.

The plaintiff's mortgage was made and accepted by plaintiff subject to Tomlinson's $2,000 mortgage, and the plaintiff is not in any position now to question the validity of such mortgage. Perrine v. First Nat. Bank, 55 N. J. L. 402, 27 Atl. 640; Tuite v. Stevens, 98 Mass. 305; Howard v. Chase, 104 Mass. 249.

The presumption that the findings of the trial court are right does not prevail in a trial *de novo* in an equity case on appeal. Englert v. Dale, 25 N. D. 587, 142 N. W. 169.

A general objection to evidence of the same class is sufficient. American Mortg. Co. v. Mouse River Live Stock Co. 10 N. D. 291, 86 N. W. 965.

*C. S. Shippy* and *H. R. Turner,* for respondents.

No reply was here necessary to enable plaintiffs to prove fraud on the trial. No counterclaim is pleaded by answer, and no request for or order by the court for a reply was made. American Case & Register Co. v. Walton & D. Co. 22 N. D. 187, 133 N. W. 309.

The property mentioned in the bill of sale was at all times thereafter in the possession of the vendor, just the same as before the bill of sale.

It was in fraud of the vendor's creditors, and void.   Comp. Laws 1913, § 7221.

In this case there is much testimony in support of the findings of the trial court, and they will not therefore be disturbed on appeal.   Dammann v. Schibsby Implement Co. 30 N. D. 15, 151 N. W. 985; Steidl v. Aitken, 30 N. D. 281, L.R.A.1915E, 192, 152 N. W. 276; Krause v. Krause, 30 N. D. 54, 151 N. W. 991.

The general rule is, in actions where the fact of fraudulent conveyances is an issue, that statements made by the grantor after the transaction, and not made in the presence of the grantee, are not binding on the grantee and therefore not admissible.   But, the exception is that where a common purpose or design to hinder, delay, or defraud creditors is claimed, then such statements become admissible.   Hartman v. Diller, 62 Pa. 37; Boyer v. Weimer, 204 Pa. 295, 54 Atl. 21; Souder v. Schechterly, 91 Pa. 83; 6 Enc. Ev. 156, ¶ D. note, 33; Murch v. Swensen, 40 Minn. 421, 42 N. W. 290; Banks v. McCandless, 119 Ga. 793, 47 S. E. 332; Moore v. Tearney, 62 W. Va. 72, 57 S. E. 263.


CHRISTIANSON, J.   This is an action for the foreclosure of a certain chattel mortgage executed and delivered by the defendant Glen E. Tomlinson to the plaintiffs on March 30, 1911.   The execution of the notes and mortgages and the amount due thereon is admitted, but the defendant Charles Tomlinson in his answer claims to be the absolute owner of all of the property described in the mortgage which plaintiffs seek to foreclose by virtue of a bill of sale executed and delivered to him by the defendant Glen E. Tomlinson on January 26, 1911.

The action came on for trial upon the issues as framed by these pleadings, and resulted in a judgment in favor of the plaintiffs for the relief prayed for in the complaint.   The defendants have appealed from this judgment, and demanded a trial anew in this court.

The defendants are father and son, and the evidence shows that Charles Tomlinson, the father, in 1905 became the owner of considerable land in Steele county in this state.   Both defendants were at that time residents of Geneseo, Illinois.   In 1906 the defendant Charles Tomlinson placed his son, Glen E. Tomlinson, upon the Steele county farm, and he continued to reside upon and farm this land from that time on, and was permitted to exercise apparent dominion over the farm

and all personal property thereon. He sold the produce, and purchased the necessary supplies, horses, and machinery. The defendants testified that Charles Tomlinson in the first place owned a one-half interest in such personal property, but that he afterwards sold the same to Glen E. Tomlinson and retained a $2,000 interest. The defendant Charles Tomlinson did not reside on the farm, but continued to reside at Geneseo, Illinois, and later at Minneapolis, Minnesota. He came up to the farm at various times, however, and at times stayed for a considerable length of time. The testimony shows that at one of such times at least he made trips to town and purchased supplies from the various merchants and dealers, and had the same charged to his son. This condition continued from 1906 up to the fall of 1913. On January 26, 1911, the defendant Glen E. Tomlinson executed and delivered to his father, Charles Tomlinson, a bill of sale of all the personal property on the farm. The bill of sale was recorded in the office of the register of deeds of Steele county on January 30, 1911. The defendant Glen E. Tomlinson, however, continued to possess and use the personal property as before, and on March 30, 1911, he executed and delivered a chattel mortgage thereon to the plaintiffs. Glen E. Tomlinson continued to retain possession of and exercise full control over the personal property in question until the fall of 1913, when Charles Tomlinson claims that he took possession thereof, but the evidence shows that even after this time Glen E. Tomlinson continued to reside upon the farm and use the personal property much as before. The trial court found that the bill of sale to Charles Tomlinson was fraudulent and void as against plaintiffs' mortgage. And the principal, and practically the only, question on this appeal is whether this finding is justified under the pleadings and the evidence in the case.

(1) Defendants contend that the question of fraud was not pleaded, and that therefore it was error for the trial court to admit evidence tending to establish fraud and render judgment upon such evidence. Defendants' counsel says: "The pleadings themselves showed that our bill of sale was good and superior, unless challenged for fraud. No question of fraud was pleaded. Consequently, no burden rested upon us to disprove fraud, for the statute raising the presumption could not be invoked without a plea."

Defendants' counsel raised this question in the trial court by a

33 N. D.—41.

motion for judgment on the pleadings, and by objections to the intro-
duction of evidence offered by plaintiffs tending to prove that the bill
of sale was fraudulent and void.    In this court these rulings of the
trial court are vigorously assailed, and defendants' counsel has cited
numerous authorities in support of the contention that such rulings
were erroneous.    An examination of the authorities cited, however,
shows that they were cases wherein the plaintiff sought to set aside
instruments on the ground of fraud, and wherein the courts affirmed
the well-known rule that a party asserting fraud must both plead and
prove facts sufficient to establish it.    The rule announced in these au-
thorities is uniformly recognized by the courts of this country, but is
not applicable to the pleadings in the case at bar.    It is conceded that
the answer of Charles Tomlinson did not contain a counterclaim, but
set forth defensive matter only.    The defense set forth in the answer
was that Charles Tomlinson was the absolute owner of the property,
and that consequently Glen E. Tomlinson had no mortgagable interest
therein.    It was not necessary for plaintiffs to reply to the new matter
in the answer, because, under the express provisions of our Code of
Civil Procedure, such new matter was "deemed controverted by the
adverse party as upon a direct denial or avoidance, as the case may be."
Comp. Laws 1913, §§ 7467–7477.    See also Comp. Laws 1913, § 7452.
By virtue of these statutory provisions the allegations of the answer
were controverted "as upon a direct denial or avoidance" by operation
of law, "and the plaintiff might prove in response thereto any fact by
way of denial or of confession and avoidance."    Pom. Code Rem. §
588; American Case & Register Co. v. Walton & D. Co. 22 N. D. 187,
133 N. W. 309; Erickson v. Elliott, 17 N. D. 389, 117 N. W. 361;
Scott v. Northwestern Port Huron Co. 17 N. D. 91, 115 N. W. 192;
Koester v. Northwestern Port Huron Co. 24 S. D. 546, 124 N. W.
740; McCarthy Bros. Co. v. Hanskutt, 29 S. D. 535, 137 N. W. 286,
Ann. Cas. 1914D, 889.

(2) Defendants' counsel next contends that plaintiffs have failed to
establish the fraudulent character of the bill of sale by sufficient com-
petent proof.    Under the laws of this state:    "Every sale made by a
vendor of personal property in his possession or under his control and
every assignment of personal property, unless the same is accompanied
by an immediate delivery and followed by an actual and continued

change of possession of the property sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or assignor, or subsequent purchasers or encumbrancers in good faith and for value, unless those claiming under such sale or assignment make it appear that the same was made in good faith and without any intent to hinder, delay or defraud such creditors, purchasers or encumbrancers." Comp. Laws 1913, § 7221.

In this case the evidence conclusively established the fact that the purported sale evidenced by the bill of sale was not accompanied by any change of possession, but that Glen E. Tomlinson retained possession of and continued to exercise dominion over the property as before. This condition rendered the sale presumptively fraudulent, and placed upon the defendants the burden of proving that the sale was made in good faith, and without intent to hinder, delay, or defraud the creditors of Glen E. Tomlinson. See Drinkwater v. Pake, ante, 190, 156 N. W. 930. In our opinion the trial court correctly concluded that the defendants failed to sustain this burden of proof, and we are agreed that the evidence, considered as a whole, fails to overcome the presumption of fraud created by the statute.

(3) Defendants' counsel next contends that under the holding of this court in McCormick Harvester Mach. Co. v. Caldwell, 15 N. D. 132, 106 N. W. 122, a bill of sale intended as security is not within the terms of the statute above quoted. A sufficient answer to this contention is that defendant Charles Tomlinson in his answer claims *absolute ownership* under the bill of sale, and does not claim that it was intended as security. No amendment was made, but throughout the trial and on this appeal the answer asserts that the bill of sale was intended to transfer the absolute title and ownership of the property.

(4) Defendants' counsel next contends that Charles Tomlinson had retained a $2,000 interest in the property mortgaged, and that, therefore, formal delivery of the chattels sold was not essential. In support of this contention defendants' counsel cites and relies upon Love v. Schmidt, 26 Okla. 648, 31 L.R.A.(N.S.) 1162, 110 Pac. 665, Ann. Cas. 1912B, 458. An examination of that authority shows that it is based upon facts radically different from the case at bar, and in no manner supports the proposition contended for by defendants' counsel. In Love v. Schmidt, supra, Henry J. Schmidt was the owner of

a three-fourths interest in 100 acres of wheat in stack. Henry F. Schmidt owned the remaining one-fourth interest. Henry J. Schmidt was in possession of the property, and while in such possession he purchased the one-fourth interest of Henry F. Schmidt. The court held that inasmuch as Henry J. Schmidt had possession of all the property sold at the time of the sale, no formal delivery was necessary. The decision of the Oklahoma court may be epitomized in the following excerpts therefrom: "It is contended that here a different rule applies for the reason that the evidence tends to prove, and the court, in finding generally for plaintiff, necessarily found, that David Schmidt and Henry F. owned all the wheat jointly; that the former, at the time of the sale of the interest of Henry F., was in possession of the whole of it; and that an actual delivery was not necessary to pass the title to that interest as against the creditors of the vendor. In this we concur. Freeman on Judgments, § 167, states the rule thus: 'If A and B together own personal property, of which A is in actual possession, and B sell his moiety to C, the possession of A immediately becomes the possession of C also. Therefore being at once, by presumption and construction of law, put in possession as tenant in common with A, it is not necessary that C should take actual possession with A to make his purchase good under the statute of frauds as against the creditors of B. If A, the cotenant in possession, had sold his interest, then the sale should have been followed by an actual change of possession, because there was no cotenant whose actual possession could have operated for the benefit of A's vendee.' And in § 153, of Freeman on Executions, says: 'The sale by one of several joint owners also furnishes an exception to the rule that there must be a change of possession. *If the cotenant selling is in the sole possession, he ought to give possession to his vendee;* but, if the other cotenants are in possession, the vendor has no right to take it from them. He may therefore from necessity make a valid sale without placing the property in the custody of his vendee.' . . .

"We are therefore of opinion that as Henry F. had not, at the time of the sale of his interest therein, possession or control of the joint property, immediate delivery and change of possession of the property sold was not necessary to pass the title to this vendor. . . .

"There is another view of the evidence reasonably tending to support

the judgment of the trial court, and that is that, as Henry J. had permitted David Schmidt and Henry F. to stack their joint wheat on his premises, a formal delivery of the interest of Henry F. therein to him as vendor would be not only impracticable, but a vain act and unnecessary to make a sale to him thereof good as against the creditors of Henry F. In Lake v. Morris, 30 Conn. 201, plaintiff, at the time of the purchase, was keeping the horses of his nephew, Lake, in his stable. The defendant claimed that because there was no formal delivery of possession of them by the vendor to the purchaser, the sale was, in point of law, fraudulent and void against creditors; but the court held otherwise, and, in effect, said that no such delivery could have taken place without first taking the horses from the plaintiff's possession for the mere purpose of redelivering them to him, and that the trial court was correct in instructing the jury that no such act was necessary. And so we say here that it would not only have been impracticable to carve out of this wheat in the stack the interest of Henry F. for the purpose of delivering it to plaintiff, but, had it been done, it would have been for the sole purpose of permitting him to accept and stack it again on the premises, which would have been a vain act and unnecessary to pass the title."

In the case at bar Glen E. Tomlinson had sole possession of the chattels, both prior to and at the time of the sale. Charles Tomlinson did not have possession in any manner, nor did he receive possession at the time of the sale, but permitted Glen E. Tomlinson to retain possession and exercise control and dominion of ownership over the property as before. Obviously the Oklahoma case is authority against, rather than for, the defendants in this case. Defendant also contends that the court should have adjudged Charles Tomlinson to have a $2,000 interest in the property. This claim was not presented in defendants' answer. Defendants' testimony is very vague and unsatisfactory as to the exact nature of this claim or interest, and we believe that the trial court was justified in failing to find that Charles Tomlinson had any such claim or interest.

We approve the findings of fact and conclusions of law of the trial court, and it follows that the judgment appealed from must be affirmed. It is so ordered.