Rock, Appellant, vs. Collins, Garnishee, Respondent.

*May 5 — May 24, 1898.*

*Garnishment: Amendment of answer: Waiver: Chattel mortgage by partnership: Fraudulent conveyance.*

1. To permit a garnishee defendant, whose original answer was a denial of liability under the statute, to amend such answer at the trial, after the plaintiff's evidence is in, by admitting his holding of certain property of the principal defendant and setting forth the facts showing that he holds the same as collateral security for a debt owing him by such defendant, was not an abuse of discretion.

2. The objection that a garnishee's answer is not verified is waived if not made at the time the same is filed.

3. One partner has power, in the absence and without the knowledge of his copartner, to execute a chattel mortgage of the partnership property to secure a *bona fide* partnership debt.

4. Whether or not one partner may, without the consent of his copartner who is accessible for consultation, execute a mortgage of the entire firm property to secure a firm debt, when the effect of such mortgage will be to practically terminate the business of the firm, the subsequent acquiescence or consent of the other partner will remove all question as to the validity of the mortgage.

5. A chattel mortgage is not rendered void by the fact that the note secured by it is not correctly described therein, if it is so far described that it appears to a reasonable certainty to be the one intended to be secured.

6. Evidence that the amount of the debt stated in a chattel mortgage given to secure a partnership debt includes an individual debt of one of the partners, though tending to show fraud, may be re-

pelled by the circumstances surrounding the transaction. Such a mortgage will be a lien only for the partnership debt.

7. The fact that the garnishee took an absolute deed of property as additional security, instead of a mortgage, is not conclusive evidence that the transaction was fraudulent, where there is evidence of good faith and the absence of fraudulent intent.

APPEAL from a judgment of the circuit court for Douglas county: E. W. HELMS, Judge. *Affirmed.*

This is an action of garnishment in aid of execution, commenced November 9, 1895. Execution was issued on a judgment in favor of the plaintiff, *Rock*, and against Jacob E. Erickson, Nettie C. Erickson, and Michael Collins, as copartners. The original garnishee answer was a statutory denial of liability, upon which issue was joined. Upon the trial an amended answer was allowed, also denying liability, but admitting the possession of certain property under a chattel mortgage, and a deed of standing timber, executed to the garnishee by the firm of Erickson & Collins, as collateral security for the debt.

The issues were tried by the court, and findings were made substantially as follows:

(1) That the plaintiff's judgment was recovered November 9, 1895, against Jacob E. Erickson, Nettie C. Erickson, and Mike Collins, as copartners.

(2) That the garnishee defendant had no dealings whatever with the defendant Nettie C. Erickson; and that the firm of Erickson & Collins was composed of Jacob E. Erickson and Mike Collins; and that the property held by the garnishee was property formerly belonging to the firm of Erickson & Collins, and received by the garnishee from that firm.

(3) That, at the time of the service of the garnishee summons, the garnishee defendant had in his possession seven draft horses and a considerable amount of other personal property, which is described at length and comprises a

logging outfit, which had been previously owned by Erickson & Collins, and used by them in a general logging business; also a town order for $300, in favor of Jacob E. Erickson, which had been turned over by said firm to the garnishee defendant as collateral to the firm's indebtedness to him; also a certain accepted order made by the firm upon one John A. Bardon, all of which property was held by the garnishee defendant as security for the debt of Erickson & Collins to him.

(4) That the garnishee defendant, on the 2d day of July, 1894, loaned the firm of Erickson & Collins $1,200 in cash, and took their note therefor, with interest at ten per cent.; and that no payment had been made upon said note at the time of the execution of the collateral securities aforementioned, except interest up to the 17th day of February, 1895.

(5) That, during the winter of 1894 and 1895, the garnishee had loaned to the defendant Mike Collins about $150, most of which was used by said Mike Collins personally, but that, when said moneys were advanced, Mike Collins agreed to give a firm check for the sum, but no firm security had been given therefor.

(6) That, during the winter of 1894 and 1895, Erickson & Collins had a contract with one Gilbert, of Duluth, Minnesota, for the sale of a large quantity of logs, to be paid for upon delivery at the mouth of the Nemadji river; but that said firm were unable to deliver said logs in the spring of 1895 without the construction of expensive dams, and consequently said firm were greatly embarrassed, and were in financial difficulties.

(7) That said firm were indebted to various creditors in the spring of 1895 to an amount exceeding $6,000, and had no money to pay such debts except as they should receive it from said Gilbert contract, and were at that time grossly insolvent, and the garnishee defendant knew that they were being pressed by creditors and were insolvent.

(8) That in May, 1895, the garnishee defendant demanded payment of his note, and finally, in June, Jacob E. Erickson gave an order upon Gilbert, in favor of John A. Bardon, cashier of the Bank of Superior, for all moneys which might become due the firm from Gilbert, which order was accepted by Gilbert conditionally, after deducting all counterclaims against Erickson & Collins; and a further order was then given by Erickson on behalf of the firm to John Bardon, in favor of the garnishee defendant, which order was accepted by Bardon, payable out of any moneys received by him from Gilbert on account of the logging contract.

(9) That all the negotiations with regard to said order were made on behalf of the firm by Jacob Erickson, the said Mike Collins having been absent from the city of Superior from the latter part of May until the latter part of June, and his whereabouts being unknown; that, during said absence, Erickson, on behalf of the firm, gave a chattel mortgage upon a portion of the logging outfit of said firm for the sum of $1,000, to another creditor of said firm.

(10) That Mike Collins returned to Superior in the latter part of June, 1895, and executed and delivered to the garnishee defendant, July 8, 1895, a chattel mortgage upon the logging outfit, as security for the said $1,200 note held by the garnishee defendant, with accrued interest and the $150 which had been loaned by the said garnishee to Mike Collins; and that Mike Collins also executed, at about the same time, to the garnishee, on behalf of the firm, a quitclaim deed of certain timber which was held by the firm under a contract giving them the right to cut and remove said timber within a certain time, it being supposed that such right was worth, perhaps, $1,000 or $1,200, but no proof being introduced on the trial of the value thereof; that said deed was given to secure the said $1,200 note; that said chattel mortgage was executed without the knowledge of Erickson, but that Erickson learned of its existence in August following, but made no objection to the mortgage at any time.

(11) That the garnishee defendant took possession of that part of the property described in his chattel mortgage which was not covered by chattel mortgages of other creditors, about November 1, 1895, and was in possession thereof when the garnishee summons was served on him, and caused the same to be sold on his mortgage at public sale, November 16, 1895, and bid the same in for $400, the reasonable value thereof at the time of the service of the summons being $550.

(12) That, at the time of the service of the garnishee summons, no part of the $1,200 note had been paid, except the sum of $220, paid to him by Bardon in October, out of the moneys received by him on the so-called Gilbert order.

(13) That the said chattel mortgage and other securities obtained by the garnishee defendant from said firm were taken by him in good faith, as security for his claim against the firm, and without intention on his part to hinder, delay, or defraud any of the creditors of Erickson & Collins.

(14) That, at the time of the commencement of the garnishee action, the garnishee defendant was entitled to hold all the property then held by him of the defendants to an extent necessary to satisfy the balance due on his $1,200 note and interest.

(15) That there is due and owing the plaintiff upon his judgment against Jacob E. Erickson, Nettie C. Erickson, and Mike Collins the sum of $353.59, with interest from December 12, 1895.

Upon these facts, the court found that the garnishee defendant was rightfully in possession of all the property which he then held, formerly belonging to Erickson & Collins, and was entitled to hold the same until payment of the balance due upon his note of $1,200, and that the plaintiff's complaint should be dismissed, with costs. From a judgment in accordance with these findings, the plaintiff appeals.

For the appellant there was a brief by *C. R. Fridley* and *A. T. Rock*, and oral argument by *Mr. Rock*. They argued,

Rock vs. Collins.

among other things, that it was an abuse of discretion to permit the garnishee to file his amended answer in this case, because it is inconsistent with his original answer, and it changes the issue. Sec. 2830, S. & B. Ann. Stats.; *Ballston Spa Bank v. Marine Bank*, 16 Wis. 125, 140. It was not verified. Secs. 2759, 2763, S. & B. Ann. Stats.; *Davis v. Pawlette*, 3 Wis. 300; *Platt v. Sauk Co. Bank*, 17 id. 222. It was his absolute duty to state the facts in his original answer. Sec. 2760, S. & B. Ann. Stats.; *Lusk v. Galloway*, 52 Wis. 164; *Schuerman v. Foster*, 82 id. 319. To admit it at the trial acted as a surprise to the plaintiff. 2 Wade, Attachments, § 371; *John R. Davis L. Co. v. First Nat. Bank*, 84 Wis. 1–3. It was error to admit the chattel mortgage in evidence and, to support it, a note not correctly described therein. Herman, Chattel Mortgages, § 59; *Whiting v. Beebe*, 12 Ark. 421; *Shores v. Doherty*, 65 Wis. 153; *Follett v. Heath*, 15 id. 601; *Andrews v. Powers*, 35 id. 644. It was a fraud for the garnishee, being amply secured and knowing that his debtors were insolvent, to take an absolute deed as additional security. *Bleiler v. Moore*, 94 Wis. 385; *Collins v. Corwith*, id. 514; *Lombard v. Dows & Co.* 66 Iowa, 243. One partner cannot dispose of property necessary to carry on the partnership business, either in payment of, or as security for, a firm debt, without the consent of his copartners. Bates, Partnership, § 401; *Hewitt v. Sturdevant*, 4 B. Mon. 453; *Mussey v. Holt*, 24 N. H. 248; *Lowman v. Sheets*, 124 Ind. 416; *Hudson v. McKenzie*, 1 E. D. Smith, 358; *Drake v. Thyng*, 37 Ark. 228; *Blaker v. Sands*, 29 Kan. 551; *Sloan v. Moore*, 37 Pa. St. 217. The partner who executed the mortgage committed a fraud upon his copartners in applying partnership property to the payment of his individual debt. *Rogers v. Batchelor*, 12 Pet. 229; *Dob v. Halsey*, 16 Johns. 34; *Davenport v. Runlett*, 3 N. H. 386; *Sauntry v. Dunlap*, 12 Wis. 364; *Viles v. Bangs*, 36 id. 131; *Keith v. Armstrong*, 65 id. 225. The fraud vitiates the whole trans-

Rock vs. Collins.

action. Taking an absolute deed as a security is a badge of fraud. *Sims v. Gaines,* 64 Ala. 392; *Ladd v. Wiggin,* 35 N. H. 426; *Chenery v. Palmer,* 6 Cal. 122.

For the respondent there was a brief by *Catlin, Butler & Lyons,* and oral argument by *Thos. E. Lyons.*

WINSLOW, J. The evidence in this case was voluminous, and it is not deemed necessary to review it in this opinion. It is sufficient to say that there was ample evidence to sustain the findings of the trial court, and hence the questions to be discussed will be simply questions of law.

1. A question of practice is raised. The original answer of the garnishee defendant consisted of a denial of liability under the statute. Upon the trial, and at the close of the plaintiff's testimony, the garnishee defendant was allowed to interpose an amended answer, against a general objection by the plaintiff, setting forth the facts as to the holding of the collateral securities. This answer was not verified, but no objection was made upon that ground, nor was any surprise claimed; and in fact it is difficult to see how any claim of surprise could be made, because the transactions set up in the amended answer were the very transactions upon which the plaintiff's claim of liability was founded. We can see no error in this ruling. Such amendments are frequently allowed at the circuit, and their allowance rests in the sound discretion of the trial court. If the objection that the amended answer was not verified was relied on, it should have been made at the time of the filing of the answer. Not being made at that time, it was waived. *Grace v. Newbre,* 31 Wis. 19.

2. It is objected that the chattel mortgage upon the logging outfit was invalid, because made by one partner alone, without the knowledge of his copartner. The general power of one partner to pay firm debts out of firm property in the ordinary course of business is well established; and, if he

Rock vs. Collins.

may pay a debt, no good reason is perceived why he may not secure its payment by pledging or mortgaging firm property. It has been held by this court that one partner may, in the absence of his copartner, mortgage the firm property to secure a *bona fide* partnership debt (*Hage v. Campbell*, 78 Wis. 573); also, that one partner may make a valid voluntary assignment of the personal property of the firm for the benefit of creditors where the other partner has absconded (*Voshmik v. Urquhart*, 91 Wis. 513). There has been some diversity of opinion upon the question whether one partner may, without the consent of his copartner who is accessible for consultation, mortgage the entire firm property to secure a firm debt, when the effect of the mortgage would be to practically terminate the business of the firm, although the weight of opinion seems to favor the validity of such a mortgage. Jones, Chattel Mortgages, § 46. But it is certain that the subsequent acquiescence or consent of the other partner would remove all question as to the validity of the mortgage. Jones, Chattel Mortgages, *supra*. Such acquiescence was proven in the present case.

3. It is claimed that the mortgage was void, because the note which it was given to secure was not correctly described, and because it was intended to secure thereby the individual debt of Mike Collins as well as the firm debt. The note held by the garnishee defendant was for $1,200, and was dated July 2, 1894; but it was described in the chattel mortgage as a note for $1,400, bearing date July 2, 1894. The evidence shows beyond question that the $1,200 note was the only note held by the garnishee, and that it was intended to be secured by the mortgage. The difference in amount arose from the fact that there was about $50 of interest due upon it, and the parties attempted to include in the mortgage the $150 indebtedness of Mike Collins. Thus, it appears that the correct date was given, but not the correct amount. It is not like the case of *Follett v. Heath*, 15 Wis. 601, where the

description of the debt was false in every respect, but rather·
like the case of *Paine v. Benton*, 32 Wis. 491, where the de-
scription was correct in some particulars and false in others,
and where it was shown by the proof that the note in evi-
dence was the note intended to be secured. "It is sufficient
if the note is so far described that it appears with reasonable
certainty to be the note intended to be secured." *Weber v.
Illing*, 66 Wis. 79. The fact that the individual indebtedness
of Mike Collins of $150 was attempted to be covered by the
mortgage, and that the amount of the mortgage was thus
improperly swelled to $1,400, was undoubtedly evidence tend-
ing to show fraud, but did not necessarily render the mort-
gage fraudulent in law. The inference of fraud may be
repelled by the circumstances surrounding the transaction.
*Bradley Co. v. Paul*, 94 Wis. 488. In the present case the
trial court was of the opinion that the inference of fraud
was overcome by the proofs, and we cannot say that such
conclusion was wrong. The mortgage is only security for
the amount of the firm debt secured thereby, and, as to the
individual debt of Mike Collins, it is not a lien. *Cribb v.
Morse*, 77 Wis. 322.

4. The garnishee defendant took an absolute deed of cer-
tain timber, as additional security for the payment of his
debt; and it is now claimed that the fact that he took a
deed, instead of a mortgage, is quite convincing evidence of
fraud. Undoubtedly, the fact that the deed does not truly
state the exact transaction, and hence is well calculated to
deceive creditors, is to be considered; but deeds are fre-
quently given as security only, and, when they are satis-
factorily shown to have been given in good faith and with-
out intent to defraud, we know of no iron-clad rule which
declares them void. Bump, Fraud. Conv. (4th ed.), § 55;
*Carey v. Dyer*, 97 Wis. 554.

5. There are many claims of error in the admission of
evidence; but as this action was tried by the court, and as

there was ample competent evidence to sustain the findings, it becomes unnecessary to consider these claims. It does not seem necessary to discuss other points made, as they relate to questions or inferences of fact, and we have discussed all the purely legal questions which are of any serious importance, involved upon the appeal.

*By the Court.*— Judgment affirmed.