N. A. PETRIE, Respondent, v. JOHN WYMAN et al., Defendants, and Argusville Farmers' Elevator Company, a Corporation, and S. A. Payne, Garnishees–Appellants.

(159 N. W. 616.)

**Garnishee — liability — measure of — defendant — relation to — position of plaintiff.**

1. A garnishee's liability is measured by his responsibility and relation to the defendant; and a plaintiff cannot, by garnishment, place himself in a superior position as regards a recovery than is occupied by the defendant.

**Creditor — garnishee — personal property — trust agreement — covered by — execution of — prior to garnishment — lien — not superior to trustee's — position of creditor.**

2. Where a creditor garnishes personal property covered by an unrecorded trust agreement executed and delivered prior to the service of the garnishment process, he does not by such garnishment acquire a lien or interest superior to that of the trustee and beneficiary in the trust agreement, under the statute (Comp. Laws 1913, § 6758) declaring a mortgage of personal property to be void as to creditors unless filed for record in the office of the register of deeds of the county where the property mortgaged or any part thereof is situated, where the debt for which the garnishment action is maintained existed before the execution and delivery of the trust agreement, and the creditor has not altered his position to his detriment since the trust agreement was executed.

**Possession of goods — retention of — presumptively fraudulent — evidence — jury — question for — change of possession.**

3. Under the provisions of the statute (Comp. Laws 1913, § 7221) the retention of possession of goods or chattels by a vendor renders the transfer

presumptively fraudulent; but where there is any substantial evidence tending to show an actual and continued change of possession, it becomes a question of fact for the jury to determine whether there has been such change of possession.

**Evidence — property — control of — trust agreement — subsequent to.**

4. Evidence examined, and *held* that it fails to establish plaintiff's contention that defendant exercised control over and sold part of the personal property covered by the trust agreement subsequent to the execution and delivery of such agreement.

**Trust agreement — reservation to grantor — or family — conveyance — inconsistent with — fraud — evidence of — voidable by creditors — general rule.**

5. A reservation (in a trust agreement) to the grantor or his family, of an advantage inconsistent with the avowed purpose of the conveyance, is ordinarily deemed to be evidence of fraud, rendering the transfer voidable at the instance of nonassenting creditors; but where such reservation is consistent with, or results from, the nature and character of the transfer, it will not, as a general rule, be deemed the reservation of a benefit rendering the transfer fraudulent.

**Evidence — introduction of — objection to — specific grounds — confined to such — all other deemed waived.**

6. An objection to the introduction of evidence upon one or more specific grounds does not go to other grounds not stated, and is a waiver of all other grounds of objection not stated.

Opinion filed September 14, 1916.

Appeal from the District Court of Cass County, *Pollock,* J.

From judgments rendered against them as garnishees, and orders denying their motions for judgment notwithstanding the verdict or for a new trial, Payne & Argusville Farmers' Elevator Company appeal.

Reversed.

*Barnett & Richardson,* for appellants.

Plaintiff is not entitled to judgment against the garnishee Payne, because no liability existed between Payne and Wyman by reason of the provisions of the lease.

A plaintiff in garnishment proceedings stands in no better position than the defendant does, with respect to the indebtedness sought to be reached by the process of garnishment, and such process will not hold anything which is not legally and equitably the property of the principal defendant. Therefore, an assignment by defendant of the

claim due him from the garnishee will take precedence over a garnishment, provided the assignment was in good faith and for a valuable consideration. 14 Am. & Eng. Enc. Law, 857; 20 Cyc. 983; Bambrick v. Bambrick Bros. Constr. Co. 152 Mo. App. 69, 132 S. W. 322; Farley v. Colver, 113 Md. 379, 77 Atl. 591; What Cheer Sav. Bank v. Mowrey, 149 Iowa, 114, 128 N. W. 7; Edward Thompson Co. v. Durand, 124 La. 381, 50 So. 407; Mansfield v. Stevens, 31 Minn. 40, 16 N. W. 455; Singer Sewing Mach. Co. v. Southern Grocery Co. 2 Ga. App. 545, 59 S. E. 473; Holmes v. Pope, 1 Ga. App. 338, 58 S. E. 281; Rushton v. Davis, 127 Ala. 279, 28 So. 477; St. Louis v. Regenfuss, 28 Wis. 144; Bradley v. Byerley, 3 Kan. App. 357, 42 Pac. 930; Dole v. Farwell, 72 N. H. 183, 55 Atl. 553; Johnson v. Brant, 38 Kan. 754, 17 Pac. 794; Netter v. Stoeckle, 4 Penn. (Del.) 345, 56 Atl. 604; Edney v. Willis, 23 Neb. 56, 36 N. W. 300; Chicago, B. & Q. R. Co. v. Van Cleave, 52 Neb. 67, 71 N. W. 971; Roby v. Labuzan, 21 Ala. 60, 56 Am. Dec. 237; Smith v. Marker, 85 C. C. A. 372, 154 Fed. 838; Grimwood Co. v. Capitol Hill Bldg. & Constr. Co. 28 R. I. 32, 65 Atl. 304; Feore v. Mississippi Transp. Co. 161 Ala. 567, 49 So. 871; J. J. Smith Lumber Co. v. Scott County Garbage Reducing & Fuel Co. 149 Iowa, 272, 30 L.R.A.(N.S.) 1184, 128 N. W. 389; Peoples' Sav. Bank v. Hoppe, 132 Mo. App. 449, 111 S. W. 1190; Clay Lumber Co. v. Hart's Branch Coal Co. 174 Mich. 613, 140 N. W. 912; Peters v. Snavely-Ashton, 144 Iowa, 147, 120 N. W. 1048, 122 N. W. 836; Bedford v. Kissick, 8 S. D. 586, 67 N. W. 609; Grand Lodge, U. B. F. v. Harrison, 5 Ala. App. 373, 59 So. 307; Barkley v. Kerfoot, 77 Wash. 556, 137 Pac. 1046; Field v. Samis, 12 N. M. 36, 73 Pac. 617.

The transaction here was simply the giving of security for the furnishing of a supersedeas bond. It was an absolute assignment by defendant of his claim against this garnishee, and therefore garnishing creditors whose process was served after the assignment could obtain no enforceable rights against the garnishee.

The defendants themselves had nothing coming to them from the garnishee. They could not have obtained a judgment against the garnishee. The plaintiff occupies no better position. 14 Am. & Eng. Enc. Law, 857, 858; Roberts v. First Nat. Bank, 8 N. D. 480, 79 N. W.

1049; Bambrick v. Bambrick Bros. Constr. Co. 152 Mo. App. 69, 132 S. W. 322; Sintes v. Commerford, 112 La. 706, 36 So. 656; Williams v. Pomeroy, 27 Minn. 85, 6 N. W. 445; Walling v. Miller, 15 Cal. 38, 7 Mor. Min. Rep. 165; Caldwell v. Coates, 78 Pa. 312; Case v. Ingersoll, 7 Kan. 367; Third Nat. Bank v. Atlantic City, 126 Fed. 413; 20 Cyc. 992, 993, 1012–1026; What Cheer Sav. Bank v. Mowrey, 149 Iowa, 114, 128 N. W. 7; Welch v. Renfro, 42 Tex. Civ. App. 460, 94 S. W. 107; Mason v. Saunders, 89 Kan. 300, 131 Pac. 562; Holmes v. Pope, 1 Ga. App. 338, 58 S. E. 281; St. Louis v. Regenfuss, 28 Wis. 144; Hall v. Page, 4 Ga. 428, 48 Am. Dec. 235; Roby v. Labuzan, 21 Ala. 60, 56 Am. Dec. 237; McLaughlin v. Swann, 18 How. 217, 15 L. ed. 357; Cavanaugh v. Merrimac Hat Co. 213 Mass. 384, 100 N. E. 662; Younkin v. Collier, 47 Fed. 571; Boutwell v. McClure, 33 Vt. 127; Crudington v. Hogan, 105 Tenn. 448, 58 S. W. 642.

The general rule is that only legal, not equitable, rights, are reached by garnishment process. 14 Am. & Eng. Enc. Law, 858; Howard v. Porter, 99 Ga. 649, 27 S. E. 725; Smith v. Worley, 10 Ga. App. 280, 73 S. E. 428; What Cheer Sav. Bank v. Mowrey, 149 Iowa, 114, 128 N. W. 7; Rushton v. Davis, 127 Ala. 279, 28 So. 477; Sintes v. Commerford, 112 La. 706, 36 So. 656; Third Nat. Bank v. Atlantic City, 126 Fed. 413.

The rule is that the reservation of a surplus under an assignment or instrument in trust does not invalidate the transfer. 20 Cyc. 561.

Declarations of an assignor made after an assignment are inadmissible against the assignee. Reinecke v. Gruner, 111 Iowa, 731, 82 N. W. 900.

The validity or invalidity of the clause in the assignment as to the surplus can have no effect on the remaining valid provisions thereof. McCormick Harvester Mach. Co. v. Caldwell, 15 N. D. 137, 106 N. W. 122.

The question of notice of the assignment is immaterial. Wyman had the right, without notice to any person, to give the trust company security for furnishing the supersedeas bond. 14 Am. & Eng. Enc. Law, 861; Williams v. Pomeroy, 27 Minn. 85, 6 N. W. 445; White v. Fernald-Woodward Co. 75 N. H. 504, 77 Atl. 401; Corning v. Records, 69 N. H. 390, 76 Am. St. Rep. 178, 46 Atl. 462; Ama-

rillo Nat. Bank v. Panhandle Teleg. & Teleph. Co. — Tex. Civ. App.
—, 169 S. W. 1091; Walling v. Miller, 15 Cal. 38, 7 Mor. Min.
Rep. 165; Crudington v. Hogan, 105 Tenn. 448, 58 S. W. 642; 20
Cyc. 553–555.

The clause in the assignment as to the surplus is wholly immaterial,
for the further reason that there is not one particle of testimony in
the record that there was any surplus. Caldwell v. Coates, 78 Pa. 312,
and cases cited; Howard v. Porter, 99 Ga. 649, 27 S. E. 725; Smith
v. Worley, 10 Ga. App. 280, 73 S. E. 428.

The holder of such surplus, if any, must be made a party before
the rights of such third party can be affected. 20 Cyc. 1101; Edward
Thompson Co. v. Durand, 124 La. 381, 50 So. 407; Mansfield v.
Stevens, 31 Minn. 40, 16 N. W. 455; Brown v. Pillow, 98 C. C. A.
579, 174 Fed. 967; Corning v. Records, 69 N. H. 390, 76 Am. St. Rep.
178, 46 Atl. 462.

No presumption of liability on the part of a garnishee can be
indulged. 20 Cyc. 1097, 1098; Bambrick v. Bambrick Bros. Constr.
Co. 152 Mo. App. 69, 132 S. W. 322; Edward Thompson Co. v.
Durand, 124 La. 381, 50 So. 407; Mansfield v. Stevens, 31 Minn. 40,
16 N. W. 455; Field v. Malone, 102 Ind. 251, 1 N. E. 507; Reinecke
v. Gruner, 111 Iowa, 731, 82 N. W. 900; Payne v. Chicago, R. I.
& P. R. Co. 170 Ill. 607, 48 N. E. 1053; Curtis v. Parker, 136 Ala.
217, 33 So. 935; Caldwell v. Coates, 78 Pa. 312.

*A. C. Lacy* and *John Carmody,* for respondent.

A cause cannot be tried upon one theory in the lower court and
upon an entirely new theory in the supreme court.

In the lower court, appellants contended that the assignment was
a sale. Here for the first time they say it was only as security. Lynn
v. Seby, 29 N. D. 420, L.R.A.1916E, 788, 151 N. W. 31; Rock
v. Collins, 99 Wis. 630, 67 Am. St. Rep. 885, 75 N. W. 426.

Every transfer of property or charge thereon, every obligation
incurred, and every judicial proceeding taken with intent to delay or
defraud any creditor or other person of his demands, is void as against
all creditors of the debtor and their successors in interest. Comp.
Laws 1913, § 7220.

It is true that generally the actions of people are presumed to be
fair and without intent to defraud others, yet transactions between

relatives will be very closely scrutinized to see that no wrong is done. Krause v. Krause, 30 N. D. 54, 151 N. W. 991.

Where it is exclusively within the power of a party to produce evidence fully explaining a given transaction involved, and he purposely withholds the same or fails to produce it, a strong suspicion is raised as to the good faith of the transaction. Whart. Ev. 1266, 1269; Helms v. Green, 105 N. C. 251, 18 Am. St. Rep. 901, 11 S. E. 470; Daisy Roller Mills v. Ward, 6 N. D. 317, 70 N. W. 271.

If a garnishee fails to avail himself of the statutory remedies provided, he alone must suffer. Paulson v. Ward, 4 N. D. 100, 58 N. W. 792.

A garnishee who, before answer, has notice that the defendant in the action has assigned the debt to another before notice of the garnishment was served, must state that fact in his answer, to be protected from an action by the assignee of the debt. Coleman v. Scott, 27 Neb. 77, 42 N. W. 896; Copeland v. Manton, 22 Ohio St. 404; Maxwell, Justice Pr. (Neb.) 5th ed. 341, 342; Drake, Attachm. § 527; Wakefield v. Martin, 3 Mass. 558; Dix v. Cobb, 4 Mass. 508; Warren v. Copelin, 4 Met. 598; Littlefield v. Smith, 17 Me. 327; Winch v. Keeley, 1 T. R. 619, 99 Eng. Reprint, 1284; Walling v. Miller, 15 Cal. 38, 7 Mor. Min. Rep. 165; Smith, T. & Co. v. Clarke, 9 Iowa, 241; Nesmith v. Drum, 8 Watts & S. 9, 42 Am. Dec. 260; Wilson v. Davisson, 5 Munf. 178; Tazewell v. Barrett, 4 Hen. & M. 259; Anderson v. De Soer, 6 Gratt. 364.

All defenses not made in the pleadings are considered as waived, especially such as are connected with the facts in the case. Stewart v. Preston, 1 Fla. 11, 44 Am. Dec. 621; Nicholson v. Golden, 27 Mo. App. 132; Wright v. Fire Ins. Co. 12 Mont. 474, 19 L.R.A. 211, 31 Pac. 87; Ex parte Bergman, 18 Nev. 331, 4 Pac. 209.

All findings must be supported by the evidence, and a judgment based upon findings not so supported cannot be sustained. Morenhout v. Barron, 42 Cal. 605; Devoe v. Devoe, 51 Cal. 543; Potomac Mfg. Co. v. Evans, 84 Va. 717, 6 S. E. 2.

No liberality of construction will excuse the failure to plead a material fact. McCormick Harvesting Mach. Co. v. Rae, 9 N. D. 482, 84 N. W. 346.

Evidence which is pertinent to the issues on trial cannot be con-

sidered for other or different purposes. McClory v. Ricks, 11 N. D. 42, 88 N. W. 1043; Harkins v. Cooley, 5 S. D. 227, 58 N. W. 560.

Where a garnishee in his answer denies indebtedness to defendant, he cannot rely on an allegation of alleged equitable assignment of his own indebtedness to a third person as a defense. First Baptist Church v. Hyde, 40 Ill. 150; Large v. Moore, 17 Iowa, 258; Rock Island Lumber & Mfg. Co. v. Fourth Nat. Bank, 63 Kan. 768, 66 Pac. 1024; Muse v. Lehman, 30 Kan. 514, 1 Pac. 804; Daggett v. Flanagan, 78 Ind. 253; Leahey v. Dugdale, 41 Mo. 517; Woodlawn v. Purvis, 108 Ala. 511, 18 So. 531; 9 Decen. Dig. title, Garnishment, § 132; 24 Century Dig. 261; Kimbrough v. Davis, 34 Ala. 583; Cox v. Cronan, 82 Conn. 175, 135 Am. St. Rep. 268, 72 Atl. 927; Wallace v. Estill County Deposit Bank, — Ky. —, 116 S. W. 351.

A judge may, upon his own motion, exclude evidence which he deems irrelevant; he is not bound, although the opposite party does not object, to sit and hear testimony having no legal bearing on the issues. Cooper v. Barber, 24 Wend. 105; Hamilton v. New York C. R. Co. 51 N. Y. 100; Skillman v. Quick, 4 N. J. L. 102; Price v. St. Louis, K. C. & N. R. Co. 72 Mo. 414, 4 Am. Neg. Cas. 508; Corning v. Corning, 6 N. Y. 97.

Even though incompetent evidence on the part of the plaintiff was admitted, if on the whole record the plaintiff was entitled to a directed verdict, then the admission of such evidence would not be ground for reversal. Hillsboro Nat. Bank v. Hyde, 7 N. D. 400, 75 N. W. 781.

CHRISTIANSON, J.  Plaintiff instituted the main action herein for the purpose of recovering from the defendant John Wyman, the full amount due upon a certain promissory note in the sum of $5,000, dated October 18, 1910, and payable to the order of one Emma C. Schinzer on the 1st day of August, 1911, and which note, it is alleged, was indorsed and transferred to the plaintiff herein. The summons and complaint in the main action were served upon the defendant on July 30, 1913.

On August 29, 1913, the plaintiff instituted a garnishment action, ancillary to said main action, against the following-named garnishees: Argusville Farmers' Elevator Company, Anchor Grain Company, S. A.

Payne, William Veitch, John Wyman Farm Land & Loan Company, and the First National Bank of Fargo. All the garnishees served and filed affidavits in form as prescribed by § 7574, Comp. Laws 1913, denying all liability. The affidavit in behalf of all garnishees (except the First National Bank of Fargo), was verified by E. T. Conmy as their agent. The plaintiff elected to take issue on such affidavits, and the issue thereby joined was brought on for trial before a jury, in one joint action, and resulted in a dismissal of the garnishment action against all the garnishees, with the exception of the Argusville Farmers' Elevator Company, and S. A. Payne, against whom the trial court directed verdicts in plaintiff's favor, and these two last-named garnishees appeal from the judgments rendered against them, and the orders denying their motions for judgment notwithstanding the verdict or for a new trial.

By stipulation the cases have been consolidated, and have been briefed and argued as one appeal.

The following facts are undisputed, or too conclusively proved, to be subject to doubt:—

The defendant John Wyman is the president of the John Wyman Farm Land & Loan Company. Wyman, individually, was the owner of the E.½ Sec. 12, Twp. 141, range 50, in Cass county, having acquired title thereto by a warranty deed executed and delivered to him by one Emma C. Schinzer, on the 12th day of June, 1911. Subsequently, said Emma C. Schinzer brought an action to have this warranty deed canceled on the alleged ground that it was obtained from her by means of false and fraudulent representations. In the spring of 1913, Wyman leased the northeast quarter to the garnishee Payne, and the southeast quarter to one Veitch (one of the garnishees against whom the proceedings were dismissed). The leases, however, were executed by the John Wyman Farm Land & Loan Company, by John Wyman, as its president, and the John Wyman Farm Land & Loan Company is described in both leases as the owner of the premises. Under the terms of the leases the tenant received one half of the crops produced, and the landlord one half.

The action of Schinzer v. Wyman was brought on for trial, and resulted in the rendition of a judgment in the district court of Cass county on July 24, 1913, in favor of Emma C. Schinzer, for a can-

celation of the deed, and for damages aggregating about $14,000. Wyman desired to appeal from such judgment, and, in order to do so and stay proceedings pending appeal, it was necessary for him to furnish a supersedeas bond in the penal sum of $16,000. He thereupon entered into negotiations with the Northern Trust Company and George H. Hollister, its president, for the purpose of obtaining such bond, with the result that the Northern Trust Company agreed to furnish, and become surety upon, such bond, provided Wyman, in some adequate manner, would secure or indemnify it against loss by reason of the risk thus assumed.

As a result of the negotiations, the Northern Trust Company became surety on such bond, the appeal was perfected, and resulted in a reversal of the judgment. (See Schinzer v. Wyman, 27 N. D. 489, 146 N. W. 898.) And in order to indemnify the Northern Trust Company against loss by reason of the risk assumed, Annie Wyman (defendant's wife) and the defendant John Wyman executed and delivered to the Northern Trust Company the following instrument:—

Trust agreement. This agreement made and entered into this 22d day of August, 1913, by and between Annie Wyman and John Wyman, her husband, parties of the first part, the Northern Trust Company, a corporation, party of the second part, and George H. Hollister, party of the third part, Witnesseth,

Whereas, the said John Wyman is defendant in a certain suit now pending in the district court of Cass county, third judicial district of the state of North Dakota, wherein Emma C. Schinzer is plaintiff, and judgment has been rendered in said action against said John Wyman, and the said Annie Wyman has requested the Northern Trust Company to execute as surety for said John Wyman, undertaking on appeal from said judgment to the supreme court of the state of North Dakota, in the penal sum of sixteen thousand ($16,000) dollars, and said Annie Wyman and John Wyman, her husband, have executed and delivered to said the Northern Trust Company an application for said surety bond, containing agreement to indemnify said the Northern Trust Company from any loss thereon, and

Whereas, in addition to such application and indemnity agreement, said the Northern Trust Company has requested, as a condition to its accepting said application and executing said surety bond, that

the conditions of this agreement should be made and complied with by the said Annie Wyman and John Wyman, her husband,

Now therefore, This agreement witnesseth that, in consideration of the premises and the execution of said surety bond by said the Northern Trust Company, the parties of the first part will convey to George H. Hollister, party of the third part, all of sections thirty-three (33) and twenty-eight (28) in township one hundred forty-five (145) north of range forty-nine (49) west, of the fifth (5th) principal meridian, situated in Traill county, North Dakota, together with one half of all crops now growing or standing upon said premises, to be held by the said George H. Hollister in trust for the following purposes, to wit:

First: To have possession of said premises and of the crops now growing or standing thereon or to be hereafter grown thereon, and to harvest and sell the same, the net proceeds thereof to be deposited in the name of said George H. · Hollister, trustee in The Northern Trust Company, and used and applied as follows: (a) To the payment of the expenses of raising, harvesting, and marketing said crops; (b) to the payment of principal and interest of liens and encumbrances upon said premises and crops; (c) to the payment of taxes upon said property; and (d) the balance to be held and retained by said George H. Hollister for the purposes hereinafter provided.

Second: To hold the title and possession of said premises and upon, and, in the event of the payment by said the Northern Trust Company of any amount under or by reason of said surety bond, to immediately, and upon demand made by the said the Northern Trust Company, and without the necessity of any consent or action by the parties of the first part, to sell said premises for such price and upon such terms and conditions as in his judgment shall be advisable, and to convey the same to the purchaser in fee simple.

Third: To sell and convey said premises at any time prior to the payment of any liability by said the Northern Trust Company under said surety bond, upon the consent of both the parties of the first part, and the party of the second part.

Fourth: And it is mutually understood and agreed that the proceeds of any sale of said premises shall be deposited by the said George H. Hollister in his name as trustee in the Northern Trust Company, and paid and applied as follows: (a) In the payment of

the principal and interest of the liens and encumbrances upon said premises; (b) in the payment of taxes or liens upon said premises; (c) in payment of expenses incurred by the said the Northern Trust Company or the said George H. Hollister in performance of said trust; and (d) the balance of such proceeds and also the balance of the proceeds of sale of all crops grown upon said premises as hereinbefore mentioned to be paid to the Northern Trust Company in satisfaction of any amount it shall pay under or by reason of said surety bond; and in case of any surplus or in the event said judgment shall be in all things reversed, and no liability shall exist upon said bond, then, and upon the happening of such event, such balance of said proceeds shall be paid by the said George H. Hollister to the said Annie Wyman.

It is also mutually agreed and understood that the crops raised on the east half (E.½) of section twelve (12) township one hundred forty-one (141) range fifty (50), or the interest of said parties of the first part, shall be disposed of and the proceeds deposited in the name of the party of the third part, in the Northern Trust Company, such money to be retained by him and applied as hereinbefore provided.

In witness whereof, the parties hereto have hereunto set their hands the day and year first above written.

Annie Wyman,

John Wyman,

The Northern Trust Company,

(Seal)                                                                      A Corporation,

By Geo. H. Hollister,

Its President.

Geo. H. Hollister,

Trustee.

Attest: P. W. Clemens, Secretary.

This agreement was duly acknowledged on August 22, 1913, by all parties, the acknowledgment of Annie and John Wyman being taken before E. T. Conmy, notary public.

The lands first described in this agreement belonged to Annie Wyman, and the lands described in the last paragraph therein are the lands involved in this action. This agreement was executed and delivered

on August 22, 1913, or one week before the commencement of the garnishment action.

Under the terms of the lease, Payne was required to deliver the landlord's share of the grain at an elevator in Argusville.

The undisputed evidence shows that at the time the garnishment summons was served, the grain had not been threshed, but it was threshed a day or two afterwards, and Payne hauled from the threshing machine and delivered the landlord's share, consisting of about 354 bushels of wheat, 407 bushels of barley, and 481 bushels of oats, at the Argusville Farmers' Elevator Company's Elevator at Argusville, North Dakota, in accordance with the stipulations in the lease. He gave the elevator company no directions in regard to the name of the owner, but, the evidence in so far as it bears upon this question at all tends to show that the storage tickets were issued to the Northern Trust Company. It is undisputed that this grain was delivered at the elevator, subsequent to the service of the garnishment summons upon Payne.

A man named Pinkham was present at the time the grain was threshed, and assisted, to some extent, in making a proper division thereof.

The testimony relative to the employment and services of Pinkham is as follows:

Payne says:

I don't know who he was working for; he kept track of the loads; we had on just as much on one load as on the other, and one took one load and the other the other. He said he was looking after that crop, but didn't say who sent him.

Wyman testifies: I sent Pinkham out there.

Q. He was in the employ of the John Wyman Farm Land & Loan Company at that time?

A. Yes, sir.

Q. How did you tell him to deposit the grain in the elevator, in whose name did you tell him? . . .

A. I told Pinkham that the Northern Trust Company had a mortgage on the grain, and that they authorized me and told me to go and handle it myself so they didn't need to send anybody out and

create any special expenses, and they trusted me to handle it and turn it into the elevator to their account.

Q. In their name?

A. Yes.

It is undisputed that all of the landlord's share of the grain grown by Payne was afterward sold and the entire proceeds therefor, transmitted to and received by George H. Hollister, and expended by him in accordance with the stipulations of the trust agreement.

The tenant Veitch raised 600 bushels of oats and 1,900 bushels of barley. The oats were governed by the provisions of the lease, and one half thereof belonged to the landlord. But the barley was raised under an arrangement whereby Veitch was to be paid for his labor, and the crop belonged to the landlord. At the time of the threshing, Veitch hauled and delivered the barley at the Argusville Farmers' Elevator Company's elevator, but placed the oats in a granary on the farm. Veitch, subsequently, and before the commencement of the garnishment action, purchased the oats.

The only evidence bearing upon this purchase is the testimony of Veitch, which is as follows:

Q. How many bushels of grain did you raise on those premises during that year?

A. Just what oat ground that I had in.

Q. Yes.

A. It was about 600 bushels and a little over by weight.

Q. Six hundred bushels of what?

A. Of oats.

Q. And what else?

A. Well, then I worked the balance of the quarter by the acre. . . . I worked by the acre for him; done the work for cash.

Q. He was to pay you for it?

A. Yes.

Q. But that didn't affect this—that wasn't in regard to this 36 acres was it?

A. No.

Q. This 36 acres you had on shares?

A. Yes.

Q. Now, you say there were 600 bushels of oats raised during the season of 1912?

A. Yes.

Q. How many of barley?

A. I think about 1,900 bushels of barley. . . . .

Examination by the court:

Q. Let me understand your testimony. Did you say that when the garnishee was served you had it all hauled?

A. All of the barley, and we finished up the oats when the garnishee was served.

Examination by Mr. Lacy:

Q. You didn't haul the oats in?

A. No.

Q. But you had hauled the barley? .

A. Had hauled the barley." . . .

Q. You hauled all of this 600 bushels yourself?

A. The oats I put in the granary.

Q. In the granary on the farm?

A. Yes.

Q. You didn't haul the oats at all?

A. No; the oats, I bought them from Wyman.

Q. You bought them afterwards?

A. *No; when I first started to thresh on the Tolson place eight or ten days before that.*

Q. You had bought these oats, you say?

A. Yes.

Q. Had you paid him for them?

A. Well, we took this work out; I was to take this work out.

Q. This barley you say you had hauled?

A. I had hauled it.

Q. You hadn't any arrangement whereby you were to get a part of the barley?

A. No.,

Examination by the court:

Q. What do you mean by that "I was to take this work out?"

A. I plowed that land and was to have $1.75 an acre for plowing

it, and I seeded it and double harrowed it and harvested it and furnished the twine and hauled it to market.

Q. And those oats were to be paid for by the work?

A. Yes.

. . . We finished on the barley and went right at the threshing of the oats, and was through with the oats when the garnishee was served.

Q. This agreement between you and Wyman, or between you and the land company as to your keeping these oats for your services, was made before the service of the garnishee summons on the 29th of August?

A. Yes; about a week before.

It is conceded that the 1,900 bushels of barley had been delivered to, and was in the possession of, the Argusville Farmers' Elevator Company, at the time the garnishment summons was served upon it, and the verdict against the elevator company was for the value of such barley.

It is undisputed that the proceeds of all the grain delivered at the elevator by both Payne and Veitch were delivered to and received by Geo. H. Hollister under the trust agreement.

The uncontradicted testimony further shows that the proceeds received by Hollister amounted to $1,549.54; that the moneys so received and credited by Hollister were paid out on different items, at different times, under the trust agreement, for interest, taxes, and seed. Hollister testified that he did not keep the items of expenditure made under the trust agreement separate with reference to the different descriptions of the lands set forth in the trust agreement, but testified that he paid out $825 interest on the two sections mentioned in the trust agreement, and in addition thereto $1,800 more, generally, as interest on the land set forth in the trust agreement.

There is no testimony whatever in the record with reference to the total amount of moneys received by Hollister under the trust agreement; the only testimony as to receipts being that of Hollister, who testifies, as above noted, to an aggregate of $1,549.54.

There is no testimony tending to establish the fact as to what the total expenditures under the trust agreement were, the only testimony

in that connection being Hollister's testimony that expenditures aggregating $2,625 were made.

There is no testimony tending to establish the fact that there was any surplus whatever paid back to either Mr. or Mrs. Wyman, or that any such surplus existed in fact. So far as the testimony goes, it shows that the disbursements exceeded the receipts in an amount of approximately $1,000 or the difference between $1,549,54 receipts, and $2,625 disbursements.

At the close of the testimony, plaintiff dismissed his action against all garnishees, except Payne and Argusville Farmers' Elevator Company, and moved for directed verdicts against the two last-named garnishees.

While this motion was pending, a colloquy, of which the following is a part, took place between the court and counsel:

The Court: What question of fact is there to go to the jury in this case?

Mr. Lacy: I don't think that there is any, your Honor.

The Court: Do you see anything Mr. Barnett?

Mr. Barnett: It seems to me that there is quite a question of fact as to whether these men had anything belonging to John Wyman or not.

The Court: There is no dispute here as to what was done and what they had, and it would be a question of law it would seem to me as to what would be the result of their acts. I do not know really what question I would submit to the jury as being a disputed question of fact. There are some legal phases of this question that I do not feel quite ready to answer just now, and I would like to look them up; if there is any disputed questions of fact, of course, we ought to have them settled, but there is no question as to the amount of grain; there is no dispute as to when the grain was hauled to the elevator; then the only question that would remain would be whether this agreement coming in as it did would have the legal result of releasing these garnishees. Now, there is no question but what all this property went into the hands of the Northern Trust Company; the proof is clear on that. These men hauled this grain to the elevator, and the grain was sold or shipped, and the proceeds were paid over to the Northern Trust Company. That is as clear as a bell. . . .

Mr. Carmody:  .  .  .  It seems to me, your Honor, that the whole case depends upon the contract or trust agreement between the Northern Trust Company and John Wyman and his wife, and that is the only question that is in the case, and that is a question of law for the court; that is the way it strikes me and that is my view of it, and that is why I made a motion for a directed verdict.  .  .  .

The Court:  (After making some computations).  That leaves it, as I see it, no question for this jury at all.  Now, unless there is a motion made here which will allow me to take the case under advisement I will have to instruct the jury one way or the other and then take it up later.  You may use your pleasure about that, gentlemen. I want to say with reference to that trust agreement that I am not prepared at this time to answer that question.  .  .  .  Under the present state of the record I shall have to instruct the jury to find for the plaintiff and as against the defendant the Argusville Farmers' Elevator Company in the sum of $874 and interest at 7 per cent since September 1, 1913; as against S. A. Payne for the sum of $596.49 and interest at 7 per cent from and since September 1, 1913; and in so doing I want it distinctly understood that on the question of the Hollister agreement, which I take to be the pivotal question in this case, I am passing on it *pro forma*.  .  .  .  In other words, this simply brings it down to the legal questions involved in the case. There is no other question of fact it seems to me to go to the jury, and if there was a motion made here on the other side, then we could, at the proper time, settle this matter by a motion for judgment notwithstanding the verdict; but counsel does not apparently desire to make such a motion, and it is up to them, of course.

Mr. Barnett:  In view of what the court says I will make that motion now at the close of the whole case, and we move for a directed verdict and thus eliminate any question of fact.

The Court:  This is what I was thinking that you was going to make a motion for judgment notwithstanding the verdict and then we would have it.  You are appearing for Payne and the elevator company ?

We have quoted from the record to perhaps a needless extent; but owing to the conflicting claims of counsel we deem it desirable to

present as fully as possible the record made in the court below, upon which our decision must be based.

The sole question presented on this appeal is whether Payne and the Argusville Farmers' Elevator Company (or either of them) were indebted to or had in their possession or under their control any property belonging to the defendant John Wyman at the time they were served with the garnishment summons.

(1) In the recent case of Shortridge v. Sturdivant, 32 N. D. 154, 155 N. W. 20, we had occasion to consider and determine the nature and extent of a garnishee's liability. In that case we said: "Plaintiff's right to recover against the garnishee is predicated entirely upon defendant's right to recover in his own name and for his own use against the garnishee. Unless the defendant could so recover, neither can the plaintiff. A plaintiff by garnishment cannot place himself in a superior position as regards a recovery than is occupied by the principal defendant. The garnishee's liability is measured by his responsibility and relation to the defendant. He can be charged only in consistency with the subject of his contract with the defendant. And if by any pre-existing bona fide contract his accountability has been removed or modified, it follows that the garnishee's liability is correspondingly affected; for the garnishment cannot change the nature of the contract between the garnishee and the defendant, nor prevent the garnishee from performing his contract with third persons."

It is obvious that the trust agreement, if valid, transferred Wyman's interest in the grain involved herein to Hollister as trustee for the benefit of the Northern Trust Company. But plaintiff contends that the trust agreement is void and of no effect. He says: (1) The trust agreement was in fact a chattel mortgage, and as such void as against Wyman's creditors because not filed for record; (2) if the agreement be construed and sustained as an absolute transfer, it is void because there was no sufficient delivery or change of possession of the personal property purported to be transferred. We deem it unnecessary to determine the character of the instrument, or whether (under our laws) such an instrument must in all cases be deemed a mortgage. For the purposes of this opinion we shall consider the instrument in both aspects.

(2) In a discussion which arose during the course of the trial,

plaintiff's counsel said: "At most this agreement is only security for actual advances, which advances, as far as the evidence shows, was never made and was kept a secret and is a fraud upon the creditors of John Wyman. I don't mean an actual fraud, but a constructive fraud."

And in his brief on this appeal, plaintiff says: "On the trial of the case plaintiff contended, and still contends, that Exhibit "C" (the trust agreement) was given as security; that it was in fact a chattel mortgage, and as such should have been filed in the office of the register of deeds of Cass county, as required by § 6758 of the Compiled Laws of 1913, and, not being filed, is void, as against creditors of Wyman and especially as to this plaintiff."

Section 6758, Comp. Laws 1913, cited and relied upon by plaintiff, reads: "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith for value, unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated."

This section was construed by this court in the case of Union Nat. Bank v. Oium, 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034; and the decision in that case is a complete answer to plaintiff's contention. In that case this court held that "where a creditor attaches personal property covered by a mortgage, between the execution and delivery of the mortgage and the filing thereof, his lien is not superior to that of the mortgagee, under the statute . . . declaring such mortgage void as to creditors unless filed, where the debt for which he attaches existed before the giving of the mortgage, and the creditor has not altered his position to his detriment since the mortgage was given, and before the filing thereof."

In denying a petition for rehearing in Union Nat. Bank v. Oium, the court said: "We hold that one who attaches for a debt incurred before any default in filing the mortgage exists is not entitled to the protection of the statute; that he is not within its manifest policy and spirit. To bring himself within the act, he must show that he parted with value while the default existed."

In the case at bar the debt for which plaintiff sued was due almost

two years before the trust agreement was executed. Obviously plaintiff did not in any manner alter his position to his detriment between the execution and delivery of the trust agreement and the service of the garnishment summons. Under the express holding of Union Nat. Bank v. Oium, supra, plaintiff is not within the provisions of the statute.

(3) The plaintiff further contends (as already stated) that if the trust agreement was intended, and be construed, as an absolute transfer, it should have been accompanied by an actual and continued change of possession; that in this case there was no such delivery or change of possession, and that consequently the trust agreement is void under § 7221, Compiled Laws 1913, which provides: "Every sale made by a vendor of personal property in his possession or under his control, and every assignment of personal property, unless the same is accompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or assignor, or subsequent purchasers or encumbrancers in good faith and for value, unless those claiming under such sale or assignment make it appear that the same was made in good faith and without any intent to hinder, delay, or defraud such creditors, purchasers, or encumbrancers."

It will be observed that failure to comply with the statute regarding delivery and change of possession of personal property is not conclusive, but only presumptive, evidence of fraud. See also Drinkwater v. Pake, 33 N. D. 190, 156 N. W. 930; Moores v. Tomlinson, 33 N. D. 638, 157 N. W. 685.

And where there is any substantial evidence tending to show an actual and continued change of possession, it is a question of fact for the jury to determine whether there has been such change. 20 Cyc. 543.

It is of course obvious that the sufficiency of the change of possession must, to a large extent, depend upon the character of the property involved. "So, where personal property sold is not reasonably susceptible of actual manual delivery, a constructive delivery is sufficient, and it is not necessary that the vendee should do more than assume such control of it as reasonably to indicate the fact of the

35 N. D.—10.

change of ownership and the termination of the vendor's control." (20 Cyc. 545.) And "when chattels are in the possession of a bailee no actual delivery is necessary. The delivery of a bill of sale completes the transaction between the parties, and it is good as against creditors and subsequent purchasers if the purchaser give the bailee notice of the sale before the goods are taken from his possession, unless it is otherwise fraudulent." 20 Cyc. 546.

The property involved in the case at bar consisted of grain, in shock or stack, situated upon the lands where such grain had been grown. This property was not capable of manual delivery, and the evidence tends to show that the tenants in possession of the grain were notified of the change of ownership, and that the grain was stored and sold in the name of the Northern Trust Company or George H. Hollister. And it is undisputed that all the proceeds arising from the sale of this grain were received and expended by George H. Hollister in accordance with the provisions of the trust agreement.

(4) It is asserted by the plaintiff, however, that the sale by Wyman to Veitch of certain oats shows that Wyman was permitted to retain possession of, and exercise acts of ownership over, the grain, subsequent to the execution of the trust agreement. We have heretofore set out in full all the evidence bearing upon the sale of the oats.

A party who asserts fraud has the burden of proving it. Until the contrary is shown, it will be presumed that the law has been obeyed; that private transactions have been fair and regular; and that the ordinary course of business has been followed. Comp. Laws 1913, § 7936, subds. 19, 20, 31.

The sale of the oats to Veitch was a natural incident of an adjustment between a landlord and tenant.

The trust agreement was executed and delivered on August 22, 1913. The garnishment summons was served upon Veitch on August 29, 1913. Veitch says he first threshed the barley and hauled and delivered that at the elevator, and thereupon threshed the oats and put that in the granary on the farm. He also says: "We was through with the oats when the garnishee was served." When asked by plaintiff's counsel if he bought the oats after they were threshed, he answers that he bought them when he "first started to thresh on the Tolson place *eight or ten days before that.*" And in answer to a question subsequently

propounded by the court, Veitch answers that he bought the oats about a week before he was served with the garnishment summons. No attempt was made to obtain a more specific answer or have Veitch fix a more definite time.

This evidence falls far short of showing that the sale to Veitch was made subsequent to the execution of the trust agreement. Nor is there a scintilla of evidence tending to show any knowledge of, or consent to, such sale by the Northern Trust Company or George H. Hollister.

(5) Plaintiff also contends that the trust agreement is void for the reason that it provides that the surplus, if any, is to be turned over to Mrs. Wyman. It is a general rule, well settled, that a person cannot settle his estate in trust for his own benefit so as to be free from liability for his debts. And one of the "tests of a fraudulent conveyance is that it reserves to the grantor an advantage inconsistent with its avowed purpose or secures for him an unusual indulgence, and as a general rule any provision in a transfer of property by a person indebted at the time whereby he reserves or secures a benefit to himself or family at the expense of his creditors is, unless assented to by them, deemed to be evidence of fraud, either actual or constructive, and renders the transfer liable to be avoided at the instance of such creditors. To render the transfer fraudulent, however, there must be some reservation of an interest in the property itself, or some reservation inconsistent with a genuine transfer. The effect of a reservation of an interest for the grantor's benefit depends to a great extent upon the character of the instrument. A reservation which results from the nature and character of the transfer, and which, whether expressed or not, the law operating upon the transfer would confer, is not as a general rule to be deemed the reservation of a benefit rendering the transfer fraudulent." 20 Cyc. 555. See also 20 Cyc. 561.

In the case at bar the land first described in the trust agreement was the property of Mrs. Wyman. The only property mentioned in the trust agreement belonging to John Wyman were the crops involved in this action. These crops were grown upon lands to which Wyman's title had been canceled by the decree of the district court. It will be noted that the entire trust agreement is drawn with reference to

the lands owned by Mrs. Wyman. The crops on the land involved in the litigation (possibly an afterthought) were included in the last paragraph of the agreement. The trust agreement was entered into under circumstances which tend to negative rather than establish fraud. It was essential for Wyman to obtain an appeal bond in the sum of $16,000. In order to obtain this bond he was required to furnish certain security to the trust company which executed the bond. In order to furnish such security, Mrs. Wyman hypothecated two sections of land in Traill county. Wyman hypothecated merely his interest in the crops produced on the land to which his title had been adjudged void by the district court's judgment. The trust agreement authorized the trustee to sell the lands belonging to Mrs. Wyman, and her share of the crops grown thereon. Obviously the proceeds therefrom, in excess of those required to be expended in performance of the trust agreement, should revert to her. So far as the evidence in this case shows, there was no surplus, but every cent received by the trustee was expended by him in the performance of the trust.

It is suggested that in view of the fact that the district court's judgment was reversed, that all liability assumed by the Northern Trust Company thereby became discharged, and that consequently the trustee would have no occasion to expend any moneys under the trust agreement. A sufficient answer to this contention is that the evidence shows that the trustee did expend every dollar of money which he received for the various purposes authorized by the trust agreement; and the record shows that the case of Schinzer v. Wyman was not finally determined by this court until April 22, 1914, and the liability of the Northern Trust Company, under its bond, continued at least until that time.

The right of the plaintiff in this action and of the respective garnishees must be determined as of August 29, 1913. The question is whether, at that time, the garnishees were indebted to, or had in their possession, or under their control, any property belonging to John Wyman. Mahon v. Fonsett, 17 N. D. 104, 115 N. W. 79. In our opinion they did not. The property involved herein had been transferred by Wyman to Geo. H. Hollister as trustee, for the benefit of the Northern Trust Company.

(6) Plaintiff also asserts that the evidence relative to the trust

agreement was inadmissible under the affidavits denying liability. The record shows that no objection was made to this evidence at the trial upon this, or any similar, ground. The objections made by plaintiff's counsel were based upon wholly different grounds. Such objections were predicated upon the alleged grounds that the trust agreement had not been recorded; that plaintiff had no knowledge thereof; that it was not binding upon the plaintiff; that the judgment in the case of Schinzer v. Wyman, 27 N. D. 489, 146 N. W. 898, had been reversed, and that therefore no liability attached to the official bond furnished by the Northern Trust Company. It will be noted that the objections urged upon the trial were based upon grounds wholly different from that now presented. The objections at the trial were directed at the validity and existence of the trust agreement. They were directed at the legal effect of the evidence, *i. e.*, they were in the nature of a recital or argument in support of the proposition that the agreement. was insufficient to defeat plaintiff's right of recovery.

The objections presented upon the trial wholly failed to apprise the adverse party or the trial court of the ground now urged. In fact the record is most persuasive evidence that plaintiff's counsel at that time had no intention of objecting upon such ground. Plaintiff's counsel first urged this ground upon the hearing of the motion for judgment notwithstanding the verdict or for a new trial. In disposing of the objection, the trial court, in its memorandum decision, said: "Attorneys ought not to try a case upon one theory, and then, upon motion for judgment *'non obstante'* or in the supreme court, adopt another. Lynn v. Seby, 29 N. D. 420, L.R.A.1916E, 788, 151 N. W. 33 (last paragraph). Had an objection been interposed that the 'defensive matters were not pleaded,' doubtless the attorneys for the garnishees (who, by the way, did not prepare the disclosure) would doubtless have asked to amend, which application would have been properly and promptly granted. Rock v. Collins, 99 Wis. 630, 67 Am. St. Rep. 885, 75 N. W. 426."

Without deciding whether the evidence relative to the trust agreement was admissible under the general affidavits denying liability, we need only say that no objection was made to the evidence upon the trial on this, or any similar, ground. The objections made were on wholly different grounds. And the rule is well settled that "an

objection upon one ground does not go to other grounds not stated, and is a waiver of all grounds of objection not specified." 9 Enc. Ev. 100; 38 Cyc. 1397. See also Rickel v. Sherman, 34 N. D. 298, 158 N. W. 266; Buchanan v. Minneapolis Threshing Mach. Co. 17 N. D. 343, 116 N. W. 335; Flora v. Mathwig, 19 N. D. 4, 121 N. W. 63; Nitschka v. Geiszler, 23 N. D. 412, 137 N. W. 454; Seckerson v. Sinclair, 24 N. D. 625, 140 N. W. 239; Dallas v. Luster, 27 N. D. 450, 147 N. W. 95; Kersten v. Great Northern R. Co. 28 N. D. 3, 147 N. W. 787.

The judgments against the garnishees are reversed and the trial court is directed to dismiss the garnishment action.